**UNITED STATES of America, Plaintiff,**

v.

**James PARSONS, et al., Defendants.**

**Civ. A. No. 4:88–cv–75–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

May 30, 1989.

On Motion For Extension of Time
Aug. 9, 1989.

Robert Wayne Caplan, U.S.E.P.A., Daniel A. Caldwell, III, Office of U.S. Atty., Atlanta, Ga. and Jon A. Mueller, Environmental Enforcement Section, Land and Natural Resources Div., Washington, D.C., for plaintiff U.S.

James Parsons, LaFayette, Ga., pro se.

P. Douglas Morrison, Office of P. Douglas Morrison, Knoxville, Tenn., pro se.

Naomi McCallie, Chattanooga, Tenn., pro se.

Kenneth Pardue, Chattanooga, Tenn., pro se.

## ORDER

HAROLD L. MURPHY, District Judge.

### I. *Procedural Posture*

In this civil action, Plaintiff United States of America moves for partial summary judgment on the liability of the defendants for costs incurred by the government to clean up a hazardous waste site and to recover treble damages. Defendants Par-

sons, Hamlen, McCallie, and Pardue have filed no responses to the motion despite having received notice of the summary judgment motion. The response of defendant MB & M Enterprise, Ltd. was filed by Defendant Morrison. As this Court has indicated on a number of prior occasions, Morrison is not a proper legal representative for MB & M. The response will therefore be stricken.

Defendants Cunnyngham and Techni–Clean Of Knoxville, Inc. have responded in pleadings filed by Attorney Dunn. Dunn is not admitted to the bar of this Court, and has never applied for admission *pro hac vice.* Dunn's failure to file such an application is inexplicable in view of the following facts: (1) the Court has denied applications by other attorneys in this lawsuit to appear *pro hac vice,* in accordance with the local rules,[1] and, consequently, Dunn should be aware of the rules of this Court; and (2) he is a member of the same law firm as Morrison, and orders of this Court have made Morrison keenly aware of the rules regarding proper representation. The responses by Defendants Cunnyngham and Techni–Clean will be stricken as well.

Morrison has filed a response *pro se.* That response is the only one that is properly before this Court. The Court will consider the merits of the government's case against all the defendants, along with Morrison's response, to determine whether the government is entitled to summary judgment against any or all of the defendants.

## II. *Facts*

The undisputed facts relevant to the disposition of the government's motion are as follows. Morrison, as general partner of MB & M Enterprise, Ltd., attended a foreclosure sale of a building in Cleveland, Tennessee. The seller was Merchants Bank of Cleveland. The auctioneer had stated that hazardous substances might be stored in drums in the building, that purchasers could be liable for disposing the

drums, and that the removal cost could be as high as $300,000. MB & M purchased the building for $685,000.

Morrison, on behalf of MB & M, hired Techni–Clean of Knoxville, Inc.—a corporation in which Morrison was Secretary—to refurbish the building. Morrison claims that MB & M acquired title to the building *only,* and that the drums remained the property of the Merchants Bank. Morrison arranged for some of the drums to be sold to Rutland Plastics Company, and claims he accepted the payment as trustee for the bank. He maintains that he forwarded the check to the bank.

Morrison gave the remaining drums to Techni–Clean, and told Cunnyngham, the person in charge, that Techni–Clean could keep the proceeds of the drums or dispose of them properly. When Cunnyngham was unable to sell the drums, he gave them to Hamlen, who arranged with Parsons to store the drums on Parsons' farm. Eventually, Hamlen and Parsons placed the drums on a farm owned by Pardue. The work was financed and arranged in part by McCallie, Pardue's grandmother.

The government inspected the farm site and found that the drums contained toluene, xylene, benzene, methyl ethyl ketone, bis (ethyl hexyl) phthalate and di (n-octyl) phthalate. The government determined that these substances posed a substantial threat of fire and explosion and that the soil and ground water could become contaminated. The government began an emergency removal of the substances in May, 1986.

In September, 1986, the government issued an administrative order to the defendants to clean up the site within 21 days. The order informed them that treble damages could be imposed if they failed to comply, and directed them to

> notify the EPA within seventy-two hours after receipt by telegram or telephone

---

1. Under Local Rule 110, an attorney who is not admitted to the bar of this Court and who neither resides nor maintains an office for the practice of law in Georgia may appear *pro hac vice* if he is in good standing of the bar of any federal court or the highest court of any State,

*and* if he designates a member of the bar of this Court with whom opposing counsel and the Court may readily communicate, upon whom papers shall be served, and who has full responsibility to act on behalf of the client.

whether you intend to comply with this Order. In addition, if you wish to confer with EPA to discuss this Order, its applicability to you, the correctness of any factual determinations upon which the Order is based, the appropriateness of any action which you are ordered to take, or any other relevant and material issue, you may request an informal conference at the EPA Regional Office located at 345 Courtland Street, NE, Atlanta, Georgia.

None of the defendants either sought an administrative hearing or complied with the order.[2] The government finished removing the hazardous substances in October, 1986.

### III. *The Summary Judgment Standard*

The court's sole function on a motion for summary judgment is to determine whether there is a genuine issue for trial. Fed.R. Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard is essentially the same as the directed verdict standard: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

The moving party bears the initial burden of identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the nonmoving party will have the burden of proof at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and present evidence showing a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553. The evidence presented need

not be admissible at trial, but must be depositions, answers to interrogatories, admissions on file, and/or affidavits. *Id.; see* Fed.R.Civ.P. 56(c).

### IV. *Are the Defendants Liable Parties under CERCLA?*

The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) provides that the following persons are liable for removal costs of hazardous substances, consistent with the "national contingency plan,"[3] from a facility:

(1) the owner and operator of … [the] facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who … arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other person or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release … of hazardous substances.

42 U.S.C. § 9607(a).

Liability under CERCLA is strict, without regard to the party's fault or state of mind. *Levin Metals Corp. v. Parr-Richmond Terminal Co.,* 799 F.2d 1312, 1316–17 (9th Cir.1986); *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1042 (2d Cir.1985); *United States v. Bliss,* 667 F.Supp. 1298, 1304 (E.D.Mo.1987).[4]

---

**2.** Defendants Morrison and MB & M have maintained that they did not receive copies of the order. However, in Morrison's request for admissions, he stated that "on or about September 26, 1986, P. Douglas Morrison received a letter and Order dated September 22, 1986 from the United States Environmental Protection Agency." MB & M made the same admission in its discovery response, and the attorney for MB & M's limited partners even responded to the order. Further, Morrison has again admitted this

fact in his response to the government's summary judgment motion.

**3.** There is no dispute in the instant case that the removal costs were consistent with the national contingency plan.

**4.** Morrison argues the government is not entitled to summary judgment on the liability issue because the harm is divisible among the various actors. Morrison is correct in his assertion of

The only defenses available are provided by § 9607(b) as follows:

> that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—
>
> (1) an act of God;
>
> (2) an act of war; or
>
> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for the carriage by a common carrier by rail), if the defendant established by the preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against the foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or
>
> (4) any combination of the foregoing paragraphs.

The Court finds that the undisputed evidence establishes that the drums in the instant case contained "hazardous substances," [5] and were transported from the Tennessee building to the Georgia farm. The only remaining issue vis-a-vis the liability of the defendants is whether they are responsible parties under § 9607(a) for paying the clean up costs.

### A. Defendant Pardue

■ The government claims that Pardue is liable as the owner of farm in which the hazardous substance was disposed. In his answer, Pardue admitted that he was the owner of the site, but maintained that he was in Jamaica when the drums were dumped and that he had not given his grandmother, McCallie, permission to dump the drums.

Pardue is a liable party under § 9607(a)(2) because he owned the farm wherein the hazardous substances were disposed. His statement that he neither knew about the drums nor gave permission for them to be dumped is arguably a defense under § 9607(b)(3), that a third party with whom he had no contractual connection was solely responsible for the damage. However, because Pardue has not presented the Court with any evidence on which his defense could be based, summary judgment in favor of the government is warranted on Pardue's liability for the response costs.

### B. Defendants Morrison, MB & M, Cunnyngham, and Techni–Clean

■ The government claims that Defendants Morrison, MB & M, Cunnyngham, and Techni–Clean are liable as parties who arranged for the transportation of the substances for disposal. Cunnyngham and Techni–Clean are liable under § 9607(a)(3) because they arranged with Hamlen to

---

law: under CERCLA, parties are jointly and severally liable for damages unless the harm to the environment caused by the disposal of hazardous substances is divisible and a reasonable basis exists to apportion that harm. *United States v. Chem–Dyne Corp.*, 572 F.Supp. 802, 808 (S.D.Ohio 1983). Morrison's contention that the harm is divisible, however, pertains to the apportionment of *damages* and not to a determination of liability. His argument concerning the divisibility of harm, therefore, is not germane to the government's motion concerning liability only.

5. In responding to the government's motion for summary judgment, Morrison claims that a factual dispute exists whether the substances were hazardous. He maintains that the government's finding that there was a substantial threat of fire and explosion is contradicted by the fact that the government allowed people attending the original auction in Tennessee to throw cigarettes next to the drums. That the government may not have prevented people from throwing cigarettes near the drums does not mean that the contents of the drums were not in fact hazardous. Although Morrison is frustrated by the government's apparent inconsistency in dealing with the contents of the drums, he has not presented evidence from which a trier of fact could conclude that the chemicals were not hazardous.

transport the drums for disposal.[6] Morrison and MB & M are likewise liable under that subsection because Morrison and MB & M, through Morrison, arranged with Techni–Clean to transport the drums out of the building in Tennessee that MB & M had purchased. Morrison maintains that he is not liable because (1) he did not own the drums but, rather, merely acted as trustee for the Merchants Bank, and (2) he instructed Techni–Clean to dispose of the drums properly.

■ The Court is not persuaded by either argument. Section 9607(a)(3) provides that a person is liable if he owns *or possesses* hazardous substances and arranges for the transport of the substance at the facility of another person. Clearly, Morrison possessed the drums and arranged with Techni–Clean to transport the drums elsewhere. The fact that Morrison did not personally select the site where the drums were to be dumped does not mean that he did not arrange for their transportation to a facility. *See United States v. Mottolo,* 695 F.Supp. 615, 626 (D.N.H.1988); *United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 233–34 (W.D.Mo.1985); *United States v. Ward,* 618 F.Supp. 884, 895 (E.D.N.C.1985). Therefore, Morrison is a liable party within the meaning of § 9607(a)(3).

■ Morrison's second argument, that he instructed Techni–Clean to dispose of the drums properly, does not defeat his liability. As stated above, one is not liable for

> an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ... if the defendant established by the preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned ... and (b) he took precautions against the foreseeable acts or omissions of any such third party and

the consequences that could foreseeably result from such acts or omissions.

First, Morrison is an officer of Techni–Clean and, therefore, Techni–Clean arguably acted as an agent of Morrison and MB & M. Second, and more significantly, Techni–Clean removed the drums pursuant to a contractual agreement with Morrison and MB & M. Third, even without such an agreement, there is no evidence that Morrison and MB & M took due care or precautions against Techni–Clean's foreseeable acts or omissions. From Morrison's version of the events, he paid no attention whatsoever to Techni–Clean's actions after he instructed them to transport the drums from the building.

Summary judgment in favor of the government is warranted on its claim that Defendants Morrison, MB & M, Cunnyngham, and Techni–Clean are liable parties under CERCLA.

### C. *Defendants Hamlen, Parsons and McCallie*

■ The government argues that Defendants Hamlen, Parsons and McCallie are liable under § 9607(a)(4) because they accepted hazardous substances for transport to disposal at a site they selected. The government's evidence shows that Parsons agreed to help Hamlen place the drums on Parsons' land, and later chose to place them on Pardue's farm. The government's evidence shows further that McCallie financed the rental of trucks to transport the drums, received payment from Techni–Clean to finance the operation, and disbursed those funds to the laborers, Hamlen and Parsons. None of these defendants have responded to the summary judgment motion, let alone presented evidence to controvert the government's proof. Summary judgment on the liability issue will issue in favor of the government and against the government.

### V. *Are the Defendants Liable for Punitive Damages?*

■ CERCLA provides further that

---

**6.** See especially Cunnyngham's response to interrogatory 8 and Cunnyngham's deposition at pages 60–65.

If any person who is liable for a release or threat of release of a hazardous substance fails without sufficient cause to properly provide removal or remedial action upon order of the President ..., such person may be liable to the United States for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred.

42 U.S.C. § 9607(c)(3). To pass constitutional muster, "sufficient cause" has been defined as an objectively reasonable, good faith belief that one has a valid defense to complying with the administrative order. *See Solid State Circuits, Inc. v. United States,* 812 F.2d 383, 388–92 (8th Cir.1987); *Aminoil, Inc. v. United States,* 646 F.Supp. 294, 296–99 (C.D.Cal.1986); *Wagner Elec. Corp. v. Thomas,* 612 F.Supp. 736, 743–45 (D.Kan.1985). The court may consider the equities of the individual case to decide whether sufficient cause exists such that treble damages "may" be imposed. *See Solid State Circuits,* 812 F.2d at 391 n. 11, *quoting* H.R.Rep. No. 253(I) 99th Cong. 2d Sess. 82, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2864.

Morrison states on "information and belief" that the government finished its removal operation in October, 1986 prior to the expiration of the time provided in the September, 1986 administrative order for him to begin removing the materials. Essentially, he argues that punitive damages should not be awarded because the EPA undertook completion of the clean up before he was allowed to comply with the order.

The administrative order gave Morrison 21 days to begin cleaning up the site, and stated further that Morrison had 72 hours to inform the EPA whether he intended to comply with the order. The record is clear that Morrison never informed the EPA of his intentions. However, the record does not show when the government began cleaning up the site, or whether its operation was continuous from May through Oc-

tober. In its reply to Morrison's response to its summary judgment motion, the government does represent that it commenced its operation on September 29, which would be more than 72 hours after the order. That representation, however, is unsupported by the evidence, which shows only that the government finished the clean up in October.[7]

If the government began its operation prior to 72 hours after the order, or if its operation was continuous from May through October, then, arguably, the defendants did not have an opportunity to comply with the order. The government is therefore not entitled to summary judgment on the punitive damages claim based on the evidence presented. The Court nevertheless notes that, for the following reasons, no other basis has been presented for denying the government's motion on the punitive damages claim.

### A. *Defendant Pardue*

■ In his answer, Pardue stated that he declined to clean up the site because he was unable financially to do so and had no involvement in the matter at any time. First, he has not presented evidence showing either his financial status or that he had no involvement in the matter. Second, the Court would be reluctant to find financial inability to be a sufficient cause because, from a policy standpoint, one should consider one's financial risks before becoming involved in transporting potentially hazardous materials.

### B. *Defendant Morrison*

Morrison argues that he had sufficient cause for not complying with the order because he did not know that the drums contained hazardous substances. He states that although the auctioneer informed potential purchasers of the building that the drums "might possibly" contain hazardous substances, no one, including the government officials, acted as if there

---

7. The September administrative order recites that immediate removal was conducted on May 19, 1986, and that the EPA had determined that additional removal was necessary. In his affi-

davit, Wayne Dixon of the EPA stated that the government's efforts began in May and concluded in October.

was any immediate danger. He points out that EPA officials were aware of the drums during the auction yet they permitted people to drop cigarettes nearby. He reasons that he was entrapped by the government. Additionally, in a prior pleading, Morrison alluded to a financial inability to pay for the removal costs.

■ First, even if Morrison was ill-informed about the contents of the drums when he purchased the building, at the very latest, he knew of the presence of hazardous substances when he received the administrative order. Because liability under CERCLA is strict, Morrison's professed lack of absolute knowledge is irrelevant to his responsibility under the statute to pay the clean up costs. There is no evidence of entrapment because there is no showing that government agents were involved to any extent in the transportation of the drums.

Second, Morrison's allusion to a financial inability to pay for the removal costs is also not a "sufficient cause." First, as discussed, financial inability should not be a defense to the imposition of punitive damages, particularly when Morrison knew that he likely was dealing with hazardous materials. Morrison should have considered his financial inability to manage the disposal of hazardous substances prior to relinquishing that responsibility to others. Second, even if financial inability were a factor, Morrison has not presented any evidence in support of such a claim.

### C. *Defendants MB & M. Cunnyngham, Hamlen, Parsons and McCallie*

The remaining defendants have presented no justifications for not complying with the administrative order other than the time period within which the government undertook its clean up operation.

### VI. *Conclusion*

ACCORDINGLY, the government's motion for partial summary judgment on the issue of liability is GRANTED on the response costs claim but DENIED on the punitive damages claim.

IT IS SO ORDERED.

## ON MOTION FOR EXTENSION OF TIME

The government moves the Court for an extension of time to file a motion for reconsideration of part of the Court's partial summary judgment order. For good cause shown, the time period is extended.

In the order, the Court determined that the Defendants are liable for the costs incurred by the government in cleaning up hazardous wastes but that the evidence did not support summary judgment on the government's claim for punitive damages for Defendants' failure to comply with an administrative order to clean up the wastes. The basis for the Court's decision was that the administrative order directed the Defendants to inform the EPA within 72 hours of their intent to comply therewith, and the evidence did not show that the government had waited 72 hours before cleaning up the site.

In its reconsideration motion, the government presents new evidence showing that it waited approximately seven days before beginning its clean up operations and that several of the Defendants, including Morrison, had indicated that they did not intend to comply with the order. The only Defendant who has responded to the reconsideration motion is Morrison. In a sworn statement, Morrison maintains that he was undergoing surgery when the order was issued, that he had requested a conference concerning his compliance, as permitted by the administrative order, and that he never said that he would not comply with the clean up order.

■ The government's new evidence shows that their operations began after the 72 hour period. The Court finds, however, that a dispute exists concerning Morrison's good faith effort to comply with the administrative order. As discussed in the Court's prior order, good faith is essential regarding the imposition of punitive damages. Summary judgment on the treble

damages claim will be denied as to Morrison. However, the record shows the absence of any dispute concerning the other Defendants' conduct in failing to comply with the administrative order. On reconsideration, therefore, summary judgment as to those Defendants will be granted on the punitive damages claim.

ACCORDINGLY, the government's motion for an extension of time is GRANTED. Further, the government's motion to reconsider is DENIED in part and GRANTED in part: judgment on the Defendants' liability for treble damages is entered for the government against all the defendants except Defendant Morrison.

IT IS SO ORDERED.