UNITED STATES of America, Plaintiff,

v.

CAROLINA TRANSFORMER CO., INC., Dewey K. Strother and Kenneth Strother, Defendants.

No. 85–82–CIV–3.

United States District Court, E.D. North Carolina, Fayetteville Division.

Jan. 5, 1987.

Jeremy Ray Akers, Trial Atty., Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Stephen A. West, Asst. U.S. Atty., E.D.N.C., Raleigh, N.C., for plaintiff.

Mark A. Sternlicht, Beaver, Thompson, Holt & Richardson, P.A., Fayetteville, N.C., for defendants.

ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This civil action has been brought by the plaintiff United States pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, and the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601, *et seq.* The plaintiff has named the following defendants: Carolina Transformer Company, Inc. ("Carolina Transformer"), a North Carolina corporation; Dewey K. Strother, the sole stockholder of Carolina Transformer who presided over the company from its inception until 1977, and then served as chairman of the board until 1981; and Kenneth Strother, who was president of the company from 1982 until December, 1984. Invoking § 107 of CERCLA, 42 U.S.C. § 9607, the United States seeks to recover from all defendants costs which it incurred in cleaning up toxic waste allegedly deposited by the defendants in the Cape Fear River and

one of its tributaries. The plaintiff also seeks to have an administrative penalty assessed against defendant Carolina Transformer, pursuant to § 16 of the TSCA, 15 U.S.C. § 2615.

Although the plaintiffs seek recovery on three separate counts, only the first of these alleges that the Strothers are liable. The Strothers have moved to dismiss this count with respect to themselves, pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P. The court today considers this motion to dismiss.

In the first count of its complaint, the plaintiff alleges that, between 1967 and 1983, Carolina Transformer operated a business near the headwaters of an unnamed tributary of the Cape Fear River. At this location, Carolina Transformer repaired and rebuilt electrical transformers. The transformers were delivered to the site and were stored there until they were repaired. Allegedly, transformers being stored and repaired at the site spilled or leaked oil containing polychlorinated biphenyls ("PCBs") onto the surface of the surrounding tract of land. In 1984, the Environmental Protection Agency ("EPA") allegedly determined that the PCB-contaminated oil had migrated from the land surface into the river via leaching and surface water flow. PCBs are believed to cause cancer in human beings and are conceded by the defendants to be hazardous substances within the meaning of CERCLA. In August, 1984, EPA undertook to clean up the polluted area, and the plaintiff, through EPA, allegedly incurred costs of at least $268,000. The costs of this cleanup were initially covered by the Hazardous Substance Response Fund (Fund) established by CERCLA. When money from this Fund is used in this manner, the United States acquires a subrogation right to recover the money from the private parties who are liable. 42 U.S.C. § 9612(c). The United States asserts that the three defendants are jointly and severally liable to it for all of the costs incurred in connection with the cleanup, pursuant to § 107(a) of CERCLA. Two of the three defendants, Dewey K. Strother and Kenneth Strother, have now moved to dismiss this count with

respect to them pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P.

The Strothers base their motion to dismiss on a jurisdictional argument. They contend that, before the United States can assert a claim under § 107 of CERCLA, it must first observe the procedures set out in § 112(a) of the Act. 42 U.S.C. § 9612(a). Section 9612(a) provides as follows:

All claims which may be asserted against the Fund pursuant to section 9611 of this title shall be presented in the first instance to the owner, operator, or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person known to the claimant who may be liable under section 9607 of this title. In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect to commence an action in court against such owner, operator, guarantor or other person or to present the claim to the Fund for payment.

The Strothers note that the plaintiff's complaint fails to allege that any claim was made against the Strothers sixty days before the government resorted to the Fund to obtain money for the cleanup. The Strothers argue that the sixty days' notice period is an absolute prerequisite to a suit of this kind and that, in the absence of such notice, this court is without jurisdiction to proceed. This court disagrees.

In advancing their jurisdictional defense, the Strothers placed heavy reliance on the decision of the U.S. District Court for the District of Massachusetts in *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 588 F.Supp. 515 (D.Mass.1983). The Massachusetts court was the first to conclude that the notice requirement of § 9612(a) is a jurisdictional prerequisite to suits under § 9607. The *Dedham* decision quickly achieved influential status and was cited with approval in another case relied upon by the Strothers, *Idaho v. Howmet Turbine Component Corp.,* 627 F.Supp. 1274 (D.Idaho 1986). Indeed, the Strothers themselves refer to the cases they cite on their own behalf as "the *Dedham* line of

cases." However, the *Dedham* holding relied upon by the Strothers had recently been reversed on appeal. *Dedham Water Co. v. Cumberland Farms Dairy,* 805 F.2d 1074 (1st Cir.,1986). The First Circuit closely scrutinized the phrasing of § 9612(a) and concluded that § 9612(a) did not necessarily apply to private judicial actions initiated under § 9607. The First Circuit also cited language from the legislative history of a recent amendment of CERCLA to the effect that "[s]ection 112(a) of current law contains a sixty-day presentation requirement relating to the initiation of claims *against the Fund....* The sixty-day presentation requirement has *never* applied to civil actions...." H.R. Conf.Rep. No. 962, 99th Cong., 2d Sess. (1986), 219, U.S.Code Cong. & Admin.News 1986, pp 2835, 3312 (emphasis added by the First Circuit). Finally, the First Circuit looked to Congress's purpose in enacting CERCLA. Finding that use of § 9612(a) as a jurisdictional bar would frustrate the beneficial purposes of the Act, the court held that a party seeking to recover its response costs under 42 U.S.C. § 9607 need not first comply with the sixty-day notice period contained at 42 U.S.C. § 9612(a). The overruling of the district court's decision in *Dedham,* of course, casts into doubt the validity of that decision's progeny. This court is in full agreement with the First Circuit's interpretation of CERCLA.

■ Like the First Circuit, this court is persuaded that § 9612(a) governs only claims against Superfund, not judicial action. The instant case does not involve a plaintiff attempting to obtain money from the Fund. Rather, it is a court proceeding by the government *on behalf of* the Fund; the object of the suit is to recover monies already disbursed by the Fund to clean up after the defendants. 42 U.S.C. § 9612 governs only claims against the Fund. This suit does not involve such a claim, but instead involves a judicial action under 42 U.S.C. § 9607. Therefore, § 9612(a) is inapplicable.

From a standpoint of policy, the interpretation of § 9612(a) urged by the Strothers is clearly at odds with the goals of the Act. The purpose of the notice requirement for claims sought to be made against the Fund is to conserve Fund assets, by encouraging responsible parties to pay cleanup costs before a claimant is forced to look to the Fund for reimbursement. *New York v. General Electric Co.,* 592 F.Supp. 291, 300 (N.D.N.Y.1984). In other words, the restrictions placed on use of the Fund by § 9612(a) are designed to protect the Fund. As the Strothers would read the section, the effect of § 9612(a) would be quite the opposite. The Strothers' interpretation would frustrate Congress's intent that those responsible for toxic dumping and spillage should pay for the correction of problems which they themselves created. The Strothers' interpretation of CERCLA would make it more difficult for the Fund to conserve and replenish its resources by erecting a needless barrier between the Fund and its right to recover its costs. Far from protecting the Fund, the Strothers' interpretation of § 9612(a) would give polluters a procedural siphon with which to drain the Fund dry. Section 9612(a) was never intended to limit the liability of polluters, and this court declines today to give it that effect. The motion of the defendants Dewey and Kenneth Strother to dismiss this action is DENIED.