**UNITED STATES of America, Plaintiff–Appellant,**

v.

**James PARSONS, et al., Defendants–Appellees,**

**Steve Baxter, Proposed Intervenors.**

No. 90–8779

**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

July 22, 1991.

Jon A. Mueller, Environmental Enforcement Section, Land and Natural Resources Div., J. Carol Williams, Edward J. Shawaker, Environment & Natural Resources Div., Appellate Section, Washington, D.C., Daniel A. Caldwell, III, Atlanta, Ga., for plaintiff-appellant.

James Parsons, pro se.

P. Douglas Morrison, pro se.

Charles W. Swanson, Knoxville, Tenn., for MB & M.

Kenneth Hamelin, pro se.

Naomi McCalli, pro se.

Kenneth Pardue, pro se.

Before FAY, CLARK and BIRCH, Circuit Judges.

PER CURIAM:

The government sued several individuals, a corporation, and a limited partnership under provisions of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA).[1] The facts of the case are summarized in the district court's order finding the defendants liable.[2] The district court awarded the government $2,260,173.72, which was three times the government's "response costs"—costs the government incurred in cleaning up the hazardous chemicals deposited by the defendants.[3] The government then moved to amend the judgment, claiming that it was entitled to receive both its actual response costs *plus* three times those costs. The district court refused to amend the judgment, finding that quadru-

---

1. 42 U.S.C. § 9601 *et seq.*

2. *United States v. Parsons*, 723 F.Supp. 757, 759–60 (N.D.Ga.1989).

3. R13–128 (district court judgment); R13–129 (same).

ple damages were not permitted by CERC-LA.[4]

The district court awarded damages to the government under section 9607(c)(3) of CERCLA, which states:

> If any person who is liable for a release or threat of release of a hazardous substance fails without sufficient cause to properly provide removal or remedial action ..., such person may be liable to the United States for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action. The President is authorized to commence a civil action against any such person to recover the punitive damages, which shall be in addition to any costs recovered from such person pursuant to section 9612(c) of this title. Any moneys received by the United States pursuant to this subsection shall be deposited in the Fund.[5]

The district court interpreted this statute to prohibit the award to the government of four times the response costs, because the government did not recover any costs under 42 U.S.C. § 9612(c). Section 9612(c) allows the government to recover against hazardous waste dumpers when an innocent party cleans up the wastes, makes a claim against the Fund established by CERCLA, and is paid by the Fund. When the Fund pays the claim, the government acquires by subrogation the rights of the claimant against the dumpers.

The district court erred in interpreting the statute so as to prohibit the award of four times the response costs. The precise question of statutory interpretation raised here seems to be one of first impression; no other court has discussed whether the government may recover four times the response costs *only* when it has received subrogated rights under section 9612(c). None of the cases cited by the district court involve the precise issue of whether the government can recover four times the response costs.[6] However, a number of courts and commentators have assumed that section 9607(c)(3) allows the government to recover both its costs and three times its costs, which recovery is the equivalent of quadruple the response costs.[7]

We have not been able to discover evidence in the legislative history of Congress' intent with respect to the government's recovery of both costs and punitive damages. As other courts have noted, "the

---

**4.** *United States v. Parsons,* 738 F.Supp. 1436, 1438–39 (N.D.Ga.1990).

**5.** 42 U.S.C. § 9607(c)(3).

**6.** *Walls v. Waste Resource Corp.,* 823 F.2d 977, 981 (6th Cir.1987) (*Walls II*) (refusing to apply 60–day notice provision of section 9612(a) to private action under section 9607(a)); *Idaho v. Howmet Turbine Component Co.,* 814 F.2d 1376, 1379–80 (9th Cir.1987) (same); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1077–82 (1st Cir.1986) (same); *United States v. Carolina Transformer Co.,* 650 F.Supp. 157, 159 (E.D.N.C.1987) (same); *United States v. Dickerson,* 640 F.Supp. 448, 452 (D.Md.1986) (same); *United States v. Moore,* 698 F.Supp. 622, 625 (E.D.Va.1988) ("[Section] 9612(a) does not apply to suits brought by the Government for reimbursement of response costs." (citations omitted)).

**7.** *See, e.g., Solid State Circuits, Inc. v. EPA,* 812 F.2d 383, 388 (8th Cir.1987) ("[Congress] sought to ensure that responsible parties would not delay clean-up activities until the EPA felt it necessary to perform the required work itself. Thus, in addition to allowing the EPA to bring an action for actual costs incurred by the Superfund in conducting the clean-up, Congress established a cause of action allowing the EPA, in its discretion, to bring a claim in federal district court to recover up to three times the amount of any costs incurred by the Superfund...." (footnote and citation omitted)); *Wagner Elec. Corp. v. Thomas,* 612 F.Supp. 736, 742 (D.Kan.1985) ("If plaintiffs choose not to comply with this EPA order, they may eventually be forced to pay four times the amount expended from the Superfund in effecting a cleanup of the allegedly contaminated site."); *Lone Pine Steering Comm. v. EPA,* 600 F.Supp. 1487, 1489 (D.N.J.) ("If EPA decides to cleanup the site itself when faced with noncompliance, it may recover its costs under Section [9607(a) ] and may seek punitive damages under Section [9607(c)(3) ]...."), *aff'd,* 777 F.2d 882 (3d Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); Civins, *Environmental Law Concerns in Real Estate Transactions,* 43 Sw.L.J. 819, —— (1990) ("[T]he EPA may clean up the site itself and seek costs under section [9607(a) ] and punitive damages under section [9607(c)(3) ] of three times the cost if failure to comply was without sufficient cause." (footnote omitted)).

legislative history of CERCLA is vague, reflecting the compromise nature of the legislation eventually enacted...." [8] We therefore turn to the language of the statute itself.

Section 9607(c)(3) provides for "punitive damages." Punitive damages are "damages on an increased scale, awarded to the plaintiff *over and above* what will barely compensate him for his property loss." [9] In the CERCLA context, one court has held, "By definition, punitive damages do not compensate a plaintiff, nor do they remedy a wrong. Punitive damages are designed to punish a wrongdoer and deter grossly improper conduct." [10] Given the ordinary meaning of punitive damages, we hold that Congress intended that punitive damages be *in addition to* whatever costs had been incurred in cleaning up the waste site.

Our conclusion is bolstered by another provision of CERCLA. The defendants were found liable under 42 U.S.C. § 9607(a), which makes those involved with the disposal of hazardous substances liable for "all costs of removal or remedial action incurred by the United States Government ... not inconsistent with the national contingency plan...." Liability is imposed "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section." Section 9607(a) indicates that liability for the actual costs of a clean-up cannot be avoided, except by operation of section 9607(b), which has no application here. The district court's conclusion that the government could recover only punitive damages and not also its costs effectively removes defendants' liability for costs under section 9607(a).

More importantly, the district court did not consider the interrelationship of the sentences in section 9607(c)(3) when interpreting the statute. [11] The section contains three sentences, of which only the first two concern us. The first sentence establishes the liability of persons who violate orders to clean up hazardous wastes "for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund." The first sentence therefore refers to punitive damages that result from situations in which the government itself has cleaned up the hazardous wastes. Given that punitive damages are traditionally separate and distinct from actual injury, the first sentence does not in any way limit the government's right of recovery to a total of three times its response costs. The second sentence deals with a completely distinct situation: It authorizes the President "to commence a civil action against [a CERCLA violator] to recover the punitive damages," which are in addition to costs recovered pursuant to section 9612(c). The just-quoted language matches language in section 9612(c)(3), which authorizes the President to "commence an action on behalf of the Fund to recover any compensation paid by the Fund to any claimant pursuant to this subchapter." The second sentence of section 9607(c)(3) thus appears to have been added primarily for the purpose of authorizing the *commencement* of an action to obtain punitive damages as a result of costs recovered by a claimant from the Fund and secondarily to clarify that the response costs plus three times the response costs are recoverable in such an action. The language in the second sentence does not clearly operate to limit the first sentence's authorization of punitive damages and response costs. And as the second circuit noted with respect to CERCLA, we are unwilling to interpret the statute "in any

---

**8.** *Walls v. Waste Resource Corp.,* 761 F.2d 311, 319 (6th Cir.1985) (*Walls I*) (footnote omitted); *see also New York v. Shore Realty Corp.,* 759 F.2d 1032, 1040 (2d Cir.1985) ("The version [of CERCLA] passed by both Houses ... was an eleventh hour compromise put together primarily by Senate leaders and sponsors of the earlier Senate version. Unfortunately, we are without the benefit of committee reports concerning this compromise." (citation omitted)).

**9.** *Black's Law Dictionary* 352 (5th ed. 1979) (emphasis added).

**10.** *Regan v. Cherry Corp.,* 706 F.Supp. 145, 151 (D.R.I.1989) (citation omitted).

**11.** *See supra* statutory text accompanying note 5.

way that apparently frustrates the statute's goals, in the absence of a specific congressional intention otherwise."[12] We accordingly believe that the section should be interpreted to allow the government to recover up to a total of four times the amount it expended in cleaning up the hazardous wastes.

As an aside, we note that the antitrust laws authorize plaintiffs to recover only a total of "threefold the damages."[13] However, the statutory language of this provision is so different from the language at issue that we do not believe it provides any guidance.

The district court's judgment is VACATED. This case is REMANDED for the district court to redetermine the appropriate amount due from the defendants. The district court is authorized to award the government's actual response costs plus up to three times those response costs as a result of the defendants' violation of CERCLA.

---

12. *Shore Realty Corp.,* 759 F.2d at 1045 (citations omitted); *see also Walls II,* 823 F.2d at 981 (quoting *Shore Realty Corp.*).

13. 15 U.S.C. § 15.