UNITED STATES of America, Plaintiff,

v.

ALLIED–SIGNAL, INC., Defendant.

No. TH 90–7–C.

United States District Court,
S.D. Indiana,
Terre Haute Division.

Sept. 30, 1991.

Winfield Ong, Indianapolis, IN, John H. Grady, Land and Natural Resources Div., Environmental Enforcement Section, Washington, DC, Steven P. Kaiser, Asst. Regional Counsel, U.S. E.P.A., Chicago, IL, for U.S.

David E. Dearing, Cromer Eaglesfield & Maher, Indianapolis, IN, for Allied–Signal, Inc.

## MEMORANDUM

BROOKS, Chief Judge.

This matter comes before the Court on Defendant Allied–Signal, Inc.'s Motion to Dismiss for lack of subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1). Allied–Signal is the owner of the Prestolite Battery Facility located at 2710 North Sixth Street, Vincennes, Indiana. The United States of America brought this civil action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9607, 9613, and 9622(e) seeking "an order enjoining defendant, Allied–Signal, Inc., from undertaking any further remedial action at a battery manufacturing facility owned by defendant, unless authorized by EPA; to recover costs already incurred by the United States in responding to releases and threatened releases of hazardous substances from the facility; and for declaratory relief that defendant will be liable for all future costs to be incurred by the United States at the facility." Complaint at 1–2.

Allied–Signal argues it was improperly placed on the National Priorities List (NPL), that only the District of Columbia Circuit can determine whether it was improperly placed on the NPL, that unless it was properly placed on the NPL the United States cannot maintain this action, and therefore this action should be dismissed.

The linchpin of Allied–Signal's argument is that this action cannot be maintained unless it is properly on the NPL. Allied–Signal asserts that §§ 104 and 111 of CERCLA which conditionally authorize the expenditure of Superfund money for site clean ups are conditions to § 107 of CERCLA which provides for recovery of expended funds from the parties responsible for the pollution. This is not an accurate construction of the statute.

Section 107 states, in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or facility ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government .... not inconsistent with the national plan ...

42 U.S.C. § 9607. The statute does not link § 107 with either § 104 or § 111, nor does it conditionalize recovery under § 107 upon anything beyond the words of § 107.

The generator defendants err in attempting to link liability under § 107 to restrictions placed on Superfund expenditures under § 104. The clear language of § 107 negates any such interdependence of the two sections. Liability is imposed under § 107 for "*all* costs of removal or remedial action ... not inconsistent with the national contingency plan." Furthermore, liability is imposed "*notwithstanding* any other provision or rule of law, and subject only to the defenses set forth in subsection (b)." Another district court likewise concluded on the basis of this language that "Section 107(a) was meant to stand by itself; liability under it can be determined without the numerous inquires [into § 104 and § 111 limitations on Fund expenditures] suggested by the defendant." *United States v. Reilly Tar and Chemical Corp.*, 546 F.Supp. 1100, 1118 (D.Minn.1982).

*United States v. Wade*, 577 F.Supp. 1326, 1336 (E.D.Penn.1983) (emphasis and brackets in original); *State of New York v. General Electric Co.*, 592 F.Supp. 291, 303 (N.D.N.Y.1984) ("The fundamental flaw in its position stems from GE's belief that section 107 'must be read in tandem with section 104 ...' "); *Pinole Point Properties v. Bethlehem Steel Corp.*, 596 F.Supp. 283 (N.D.Cal. 1984) ("[C]onsistency with the National Contingency Plan, not pre-authorization or appearance on the National Priorities list, is all that is required under section 107(a)(4)(B)."); *United States v. Reilly Tar & Chemical*, 546 F.Supp. 1100, 1118 (D.Minn.1982) ("Reilly Tar errs in attempting to link liability under section 107 to the authorized uses of the Fund provided in section 111. Liability under section 107(a) is independent of the authorized uses of the Fund under section 111 and of the cooperative agreement called for by section 104(c)(3).").

As several courts have noted, "there are no statutory or procedural prerequisites to a cost recovery action under § 107(a)." *United States v. Marisol, Inc.*, 725 F.Supp. 833, 841 (M.D.Penn.1989); *United States v. Kramer*, 757 F.Supp. 397 (D.N.J.1991) ("CERCLA imposes no statutory or procedural prerequisites to bringing a section 107(a) response cost recovery action.").

This interpretation of § 107 is consistent with the congressional intent to impose liability for the clean up of sites on the responsible parties who generated the hazardous waste. *United States v. Aceto Agricultural Chemicals*, 872 F.2d 1373, 1377 (8th Cir.1989) ("CERCLA places the ultimate responsibility for clean up on 'those responsible for problems caused by the disposal of chemical poisons,' *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.1986) ..."). Furthermore, it is also consistent with the directive of several circuits courts that § 107 be given a broad interpretation to effectuate the goals of the statute. *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1045 (2nd Cir.1985) ("We will not interpret section 9607(a) in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intention otherwise."); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.1986); *United States v. Parsons*, 936 F.2d 526, 528–29 (11th Cir. 1991); *Anspec Company, Inc. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1247 (6th Cir. 1991); *Walls v. Waste Resource Corporation*, 823 F.2d 977, 981 (6th Cir.1987); *See United States v. Aceto Agricultural Chemicals*, 872 F.2d 1373, 1377 (8th Cir.1989).

Section 107 ... is intended to impose liability on the responsible parties who created and/or dumped the hazardous wastes.

The restriction contained in § 104 are intended to protect the integrity of the Superfund and not limit the government's replenishing it by recovery from responsible parties. Thus, the fact that government expenditures at the Wade site are not authorized by § 104 affects only the availability of Superfund money, and not the generator defendants' liability.

*Wade* at 1336.

Since it is not relevant to this action whether Allied–Signal is properly on the NPL, there is no merit to Allied–Signal's motion to dismiss. Allied–Signal's motion to dismiss is denied.