**EMPLOYERS INSURANCE OF WAUSAU, a mutual company, Plaintiff–Appellant,**

v.

**Carol M. BROWNER, Administrator of the United States Environmental Protection Agency, et al., Defendants–Appellees.**

Nos. 94–2005, 94–2006 and 94–2081.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1995.

Decided April 12, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied May 17, 1995.

---

Daniel C. Murray, Asst. U.S. Atty., Frederick S. Mueller (argued), William J. Anaya, Johnson & Bell, Chicago, IL, Robert M. Wattson, Sandra Wallace, David C. Linder, Joseph P. Pozen, Zelle & Larson, Minneapolis, MN, for plaintiff-appellant in No. 94–2005.

Elizabeth A. Strange, Nancy Gaines, Department of Justice, Torts Branch, Civ. Div., Washington, DC, James M. Kuhn, Asst. U.S. Atty., Jonathan Haile, Office of the U.S. Atty., Civ. Div., Chicago, IL, Alan D. Greenberg, U.S. Dept. of Justice; Environment & Natural Resources Div., Denver, CO, for Carol M. Browner, Valdas V. Adamkus, William E. Muno, E.P.A., Bruce M. Diamond.

J. Carol Williams, Jacques B. Gelin (argued), Elizabeth A. Strange, Nancy Gaines, Alan D. Greenberg, Dept. of Justice, Land & Natural Resources Div., Washington, DC, for U.S.

Daniel C. Murray, Asst. U.S. Atty., Frederick S. Mueller, William J. Anaya (argued), Robert W. York, Johnson & Bell, Chicago, IL, for plaintiff-appellant in No. 94–2006.

Daniel A. Dupre, Daniel C. Murray, Asst. U.S. Attys., Frederick S. Mueller, Joseph G. Lyons, Johnson & Bell, Chicago, IL, Robert M. Wattson (argued), Sandra Wallace, David C. Linder, Joseph P. Pozen, Zelle & Larson, Minneapolis, MN, for plaintiff-appellant in No. 94–2081.

Before POSNER, Chief Judge, CUDAHY, Circuit Judge, and GRANT, District Judge.*

POSNER, Chief Judge.

We have consolidated the appeals in two intimately related cases that arise under the

* Hon. Robert A. Grant of the Northern District of Indiana.

Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 *et seq.* The Act, also known (in its current, amended form) as the Superfund law, requires that sites contaminated by toxic wastes be cleaned up by or at the expense of the persons responsible for the contamination. In one of the cases, Employers Insurance of Wausau, an insurance company that the EPA had ordered to clean up a contaminated site, sued the President of the United States, invoking a 1986 amendment to the Superfund law that provides that "any person who receives and complies with the terms of any order" issued by the EPA to clean up a contaminated site may "after completion of the required action" petition the President for reimbursement of "the reasonable costs of such action"—"response costs," as they are called—and if the petition is turned down may, within sixty days, sue the President in federal district court. §§ 9606(b)(2)(A), (B). The petitioner can obtain judicial relief either by proving by a preponderance of the evidence that it is not liable for response costs (and that the costs it incurred for which it seeks reimbursement were not excessive), § 9606(b)(2)(C), or that the particular response action ordered was arbitrary and capricious, or otherwise unlawful. § 9606(b)(2)(D). The district judge dismissed the suit on the ground that Employers Insurance had failed to complete the clean-up ordered by the EPA. *Employers Ins. of Wausau v. Clinton,* 848 F.Supp. 1359 (N.D.Ill.1994).

In the other suit, Employers Insurance sued the Administrator of the EPA, to whom the President has delegated the task of responding to petitions for reimbursement, contending primarily that the statutory procedures for challenging clean-up orders are constitutionally inadequate. This suit was filed under 28 U.S.C. § 1331 as a "nonstatutory" review proceeding (of which more later), an accepted method of challenging the procedures used by an agency. *Marozsan v. United States,* 852 F.2d 1469, 1474 (7th Cir. 1988) (en banc). The district judge thought the statutory procedures adequate, rejected the plaintiff's other contentions, and dismissed the suit. *Employers Ins. of Wausau v. Browner,* 848 F.Supp. 1369 (N.D.Ill.1994).

The constitutional challenge is baseless; as we shall see, the remedies that the Superfund law creates against invalid clean-up orders fully satisfy the requirements of due process. Between them, the two suits (and a third, whose dismissal we affirmed in *Employers Ins. of Wausau v. United States,* 27 F.3d 245 (7th Cir.1994)) fire what we are constrained to describe as a noisy and largely incomprehensible broadside of charges the majority of which lack, at least so far as we are able to understand them, sufficient merit to warrant discussion.

How did it come about that an *insurance* company was ordered to clean up contaminated land? Employers Insurance had issued a fire insurance policy to the occupant of a building in Michigan. The building caught fire and several electrical transformers were damaged. In a settlement with its insured, Employers Insurance agreed to have certain oils and other fluids drained from the transformers and removed from the insured's premises. According to the EPA— Employers Insurance denies this—the insurance company arranged for the transportation of some seven hundred gallons of these fluids to an oil recycling facility elsewhere in Michigan. Shortly afterward, the facility was found to be contaminated with PCBs (polychlorinated biphenyls) and VOCs (volatile organic compounds), and the PCB contamination was traced to the fluids that had come from the transformers. The EPA designated Employers Insurance as a potentially responsible party within the meaning of the Act—responsible, that is, for the contamination and hence for cleaning it up—and it ordered the insurance company, along with several other alleged contributors to the contamination of the recycling facility, to participate in the clean-up. After initial resistance, Employers Insurance agreed to participate, and it submitted a plan, which the EPA approved, detailing its participation. Neither the order that the EPA issued, nor the plan of compliance that Employers Insurance submitted, is limited in so many words to the elimination of the PCB contamination. But after Employers Insurance finished that part of the clean-up, it stopped work, claiming that it was not responsible for, and therefore

would not clean up, any contamination not caused by PCBs. It petitioned the EPA (nominally the President) for reimbursement of the costs that it had incurred in the clean-up—an amount in excess of $2 million. The EPA turned the insurance company down (precipitating these two suits) on the ground that the company had not completed the job.

Employers Insurance claims that it is not responsible for *any* of the contamination at the recycling facility, not even the PCB contamination, because it had not, as the EPA thought it had, arranged for the transportation of the noxious fluids, which would have made it a responsible party. § 9607(a)(3); *Amcast Industrial Corp. v. Detrex Corp.*, 2 F.3d 746, 751 (7th Cir.1993). It also denies that its petition for reimbursement was premature; it *had*, it contends, completed the clean-up that it was ordered to do; and it argues that it is entitled to the independent judgment of the district court on whether or not this is so. The EPA concedes that if the insurance company did not arrange for the transportation of the fluids, the company is entitled to full reimbursement—but not until it complies fully with the clean-up order. And, the agency argues further, its determination that the company did not comply fully with the order may be set aside by a court only if that determination is found to be unreasonable ("arbitrary and capricious") in a separate judicial proceeding—not in a reimbursement proceeding, which the agency insists is premature.

After Employers Insurance abandoned the clean-up, the EPA stepped in and arranged for the completion of the job at a cost of several hundred thousand dollars. The agency has not yet tried to recover this expense or any part of it from Employers Insurance. Indeed, there is no reason to think the company *was* responsible for any of the contamination that it refused to clean up. And it is only responsible parties who are required by the Superfund law to pay the costs of cleaning up contaminated sites. The concern of Employers Insurance is not with the money that the EPA spent to complete the clean-up and might conceivably though improbably seek to recover from the company, but with the $2 million that the company spent and is unable to get reimbursed because it did not complete the job.

Without the provision authorizing suits for reimbursement of response costs, a person potentially responsible for toxic-waste pollution who was served with a clean-up order would have just two choices: comply with the order, or refuse to comply, in which event the EPA could either seek a mandatory injunction against the refuser, § 9606(a), or hire someone to clean up the polluted site at the EPA's expense and then seek to recover that expense by a suit against the person it had ordered to do the clean-up. § 9613(h)(1). The defendant would have an opportunity in that suit to put the EPA to its proof that the Superfund law really did require the defendant to clean up the site. *United States v. Princeton Gamma–Tech, Inc.*, 31 F.3d 138, 141–43 (3d Cir.1994). But it could not challenge the order in advance of having to comply; that route is, as we shall see, closed. Its choice would be to comply or to run the risk of being found to have violated a valid order. This would be a hard choice because there are heavy sanctions for disobeying a valid clean-up order, including large civil fines and treble damages. §§ 9606(b)(1), 9607(c)(3). We stress "valid"; it is of course a good defense to a suit to collect these amercements that the order is invalid. Even if it is valid, the district court in which sanctions are sought can abate them in whole or in part if persuaded that the party had a reasonable though erroneous basis for believing that the clean-up order was invalid. So at least *Solid State Circuits, Inc. v. EPA*, 812 F.2d 383, 391–92 (8th Cir.1987), interpreted the defense to treble-damages liability for those who have "sufficient cause" to disobey such an order. § 9607(c)(3). Still, there is a risk that the court will not find that the party acted reasonably, and this risk places pressure on the party to comply even if it has serious doubts whether the order is valid. *Solid State Circuits, Inc. v. EPA, supra*, 812 F.2d at 388–89. For if it loses it may end up bearing much more than just the response costs for which the EPA sued.

The provision for reimbursement trims the horns of this dilemma by offering a party served with a clean-up order a third way.

*Id.* at 389 n. 9; *Dico, Inc. v. Diamond,* 35 F.3d 348, 349 (8th Cir.1994). It need not disobey the order and risk heavy sanctions. It need not obey and swallow the heavy costs of compliance. It can obey and then when it has completed the clean-up required by the order sue for the return of its expenses on the ground that it was not a responsible party within the meaning of the statute after all.

But what happens when, as in the present case, a party takes what we are calling the third way but does not complete the clean-up? Completion of the action required by the EPA is an express statutory condition for seeking reimbursement. Does this mean that if for reasons utterly beyond a party's control it fails to complete the clean-up ordered by the agency it forfeits all right to seek reimbursement for expenses that it incurred, even if it turns out that it was never liable under the Superfund law? And even if it turns out, as here, that the clean-up *has* been completed, albeit by someone else? Cf. *North Shore Gas Co. v. EPA,* 930 F.2d 1239, 1244–45 (7th Cir.1991). That is the EPA's position. Its lawyer told us at argument that, should the agency unreasonably refuse to acknowledge the completion of the clean-up, this would be final agency action which, because it harms the party by (in the EPA's view) blocking the party's right to seek reimbursement yet is not subject to a special statutory procedure prescribing the method of judicial review, is judicially reviewable by means of a suit for declaratory judgment brought in federal district court. Reviewable, that is, by the so-called "nonstatutory review" route, the catch-all remedy for persons aggrieved by final agency action for which no statute specifies a path of judicial review. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Maxon Marine, Inc. v. Director, Office of Workers' Compensation Programs,* 39 F.3d 144, 146 (7th Cir.1994). But it would not be reviewable, in the EPA's view, by means of a suit for reimbursement.

■ We may assume without having to decide that the agency's refusal to acknowledge the completion of the clean-up is reviewable by the nonstatutory-review route; for while the Superfund law prescribes and explicitly makes exclusive the routes for obtaining judicial review of clean-up orders, § 9613(h), the agency action that we are discussing—a refusal to acknowledge compliance with such an order—is not itself a clean-up order, not quite anyway. Even so, we do not see why such an action could not also be reviewed in a suit for reimbursement. If the party ordered to clean up a contaminated site claims to have completed the work, he has a claim for reimbursement, the reimbursement provision being available to "any person who receives and complies with the terms of any" Superfund clean-up order. § 9606(b)(2)(A). If the EPA turns down the claim on the ground that the clean-up has not been completed (or if completed, not completed by the party ordered to complete it, and therefore the agency's order was not complied with), the party has a right to sue and the agency can defend by showing that the clean-up has not been completed and thus that a condition of maintaining such a suit has not been fulfilled. The district court will adjudicate this ground for dismissal exactly as it would do in a separate proceeding to challenge the agency's refusal to acknowledge the completion of the clean-up. The only difference—because in a suit for reimbursement, as in the ordinary nonstatutory-review proceeding, judicial review is confined to the record compiled in the administrative proceeding, § 9613(j)(1); *First National Bank v. Comptroller of Currency,* 956 F.2d 1360, 1362 (7th Cir.1992)— will be the caption: the suit will be against the Administrator of the EPA rather than against the President—a distinction without a difference, because the President has delegated his authority under the reimbursement provision to the EPA. Ordinarily the refusal to acknowledge completion of the clean-up and the denial of the petition for reimbursement (the denial that the party has sixty days to challenge by bringing a suit for reimbursement) will be contained in the same order; they were here.

■ A more troublesome case is where the agency takes steps to postpone completion, making it impossible for the party to argue that it has completed the action required of it by the agency. Employers Insurance argues

that it complied fully with the clean-up order, which it interprets as being limited to PCB contamination, but that when it finished the EPA told it to do more. Like the miller's daughter in "Rumpelstiltskin," the company worries that if it did the more the EPA would find something else for it to do, thus postponing indefinitely the time when it could obtain reimbursement. The EPA's response (at oral argument, so possibly ill-considered) is that the party can challenge each of the successive orders in a nonstatutory review proceeding. We are surprised by this response. The successive orders would be clean-up orders, and, with exceptions not material to this case, the Superfund law allows these to be challenged only in proceedings by the agency to enforce the order (either by injunction or by a suit to recover the expense of the clean-up or to impose penalties for noncompliance with the clean-up order) or proceedings by the allegedly responsible person to seek reimbursement of the costs incurred in complying with the order. §§ 9613(h)(1)–(3).

■ Even if a nonstatutory review proceeding were possible, the party's right to reimbursement could (in principle anyway) still be delayed indefinitely, each successfully challenged order being succeeded by another order. That cannot have been the intention of the statute's draftsmen, as we can show by attending carefully to the statutory language. The right of reimbursement extends to "any person who receives and complies with the terms of [any order]," and ripens into a right to petition and to sue "after completion of the required action." § 9606(b)(2)(A). Obviously "required" means "required by the order." Once a party completes whatever action is required by the terms of any order, it can seek reimbursement for the costs of *that* action. The fact that the agency issues another order (which the party is free to ignore if it is willing to run the risk of being made the defendant in an enforcement action) does not diminish the party's rights to challenge the previous order.

■ The EPA does not acknowledge having issued a second order, an order that Employers Insurance clean up contamination unrelated to PCBs. It claims that the broad-er scope was implicit in the original order. The dispute is thus over the interpretation of the order rather than over the agency's right to issue successive orders and deny reimbursement until the last one (if there is a last one) is complied with fully. If the EPA is wrong about the meaning of the original order, this means that the order has been complied with fully—the action required by it completed—and Employers Insurance is entitled to proceed with its suit for reimbursement. The interpretive question, like the question whether a party has completed whatever action the agency wanted him to take, is one that the district court can decide in the reimbursement suit—with what weight given to the agency's view of the matter we shall consider shortly.

■ The most difficult case is where the party cannot complete the required action for reasons beyond its control. Suppose it simply runs out of money and cannot borrow more. *United States v. Parsons,* 723 F.Supp. 757, 764 (N.D.Ga.1989), aff'd on other grounds, 936 F.2d 526 (11th Cir.1991), thought this irrelevant, at least in the special circumstances presented there. We are not sure it should *never* be relevant. Or suppose the cost of the clean-up turns out to be so much higher than anyone reasonably anticipated that the party—who by hypothesis believes himself not to be liable at all, which is why he wants to preserve his right to seek reimbursement for the expenses that he incurs in the clean-up—abandons it half way through. Is he, in either case, forced to write off the costs that he has incurred even though they have reduced the level of contamination and so the costs to the taxpayer of completing the clean-up, and even though he could prove that he was not a responsible party after all? (We set to one side, as inessential to our point, the statutory right of contribution from other sources, if any, of the contamination. § 9613(f).) An affirmative answer would be harsh. It would also retard the cleaning up of contaminated sites—one of the objectives of the reimbursement provision. *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1324 (7th Cir.1990); *Dico, Inc. v. Diamond, supra,* 35 F.3d at 349. It would have this effect by inducing more firms to

defy clean-up orders and thus put the agency to its proof of statutory responsibility. And it is not compelled in the teeth of reason by the language of the statute. The statute requires compliance with the clean-up order, but compliance need not be a matter of all or nothing. In contract law, substantial compliance with contractual duties is often compliance enough. *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.,* 962 F.2d 628, 636 (7th Cir.1992); *Jacob & Young's, Inc. v. Kent,* 230 N.Y. 239, 129 N.E. 889 (1921) (Cardozo, J.). The doctrines of impossibility, impracticability, and frustration, which operate as implied terms in contracts, sometimes excuse noncompliance with contractual duty altogether. These familiar defenses, along with a concept of substantial compliance as sufficient when to require more would be unreasonable, could be considered—we need not decide whether they are—implied terms in EPA orders as well. The notion of substantial compliance is not wholly foreign to environmental law. See, e.g., *Louisiana–Pacific Corp. v. ASARCO Inc.,* 24 F.3d 1565, 1575–76 (9th Cir.1994). And remember that one ground for reimbursement is that "the President's decision in selecting the response action ordered was arbitrary and capricious." § 9606(b)(2)(D). If the term "selecting" is allowed to extend forward in time from the initial order, unreasonable insistence on full compliance might be thought a ground for invoking the provision.

Employers Insurance does not argue, however, that it would have been infeasible or unduly burdensome for it to shell out another couple of hundred thousand dollars to complete the clean-up project on which it had already spent in excess of $2 million. It is a large company with thousands of employees, and its annual revenues from premiums exceed $1 billion. It does argue, absurdly as it seems to us, that if it spent $1, or indeed 1¢, on cleaning up the contaminated site, it would be entitled to sue for reimbursement of that expense and use the suit as a vehicle for obtaining an adjudication of its claim not to be a responsible party. The terms "compliance" and "completed" in the statute cannot be tortured long or hard enough to yield authorization for such a procedure, which is

inspired not by anything in the Superfund law but by the provision for refund suits in the Internal Revenue Code—which anyway requires (with immaterial exceptions) payment in full before the suit is filed. *Flora v. United States,* 357 U.S. 63, 75–76, 78 S.Ct. 1079, 1086–87, 2 L.Ed.2d 1165 (1958), aff'd on rehearing, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Thomas v. United States,* 755 F.2d 728, 729 (9th Cir.1985). If a party ordered to clean up doesn't want to spend any money, it can refuse to obey the order, wait to be sued, and use that suit as the vehicle for obtaining a determination of its liability. The risk of losing and being made to pay heavy sanctions, a risk mitigated by the defense of sufficient cause as glossed in *Solid State Circuits,* would not violate the Constitution even if there were no reimbursement provision, 812 F.2d at 389–92; it certainly does not violate it given the additional if imperfect remedy which that provision grants. The energy that Employers Insurance devoted in its briefs to attempting to create constitutional qualms about the remedial structure of the Superfund law was misdirected.

The most difficult question presented by *this* case is whether the EPA is authorized to gut the provision for reimbursement by issuing unreasonably, oppressively broad orders. Suppose the order had required Employers Insurance to clean up the recycling facility and, while it was at it, also to clean up the residual contamination in Chernobyl from the nuclear disaster there in 1986. If the insurance company cleaned up just the recycling facility it would not be complying with the order and if the EPA is right it would never be able to seek reimbursement. Our actual case is less extreme. But according to Employers Insurance, the EPA was completely unreasonable in ordering it (if that is what the agency actually *did* in the original order—this is the interpretive question that we mentioned) to clean up not only PCB contamination for which it would be responsible if it did arrange for the transportation of the fluids from its insured's transformers, but also unrelated contamination at the site, for which it could not possibly bear any responsibility.

■ We imagine that in a case, illustrated by our Chernobyl hypothetical, in which the clean-up order is so grotesquely broad as plainly to exceed the agency's powers, the party against whom it is directed can comply with the valid part of the order and disregard the rest as void, a nullity, and having complied with the valid part seek reimbursement for the costs of that compliance. An order so completely ultra vires is no order for purposes of deciding whether compliance and completion have been achieved; the valid and the void commands in the order can be separated, and the void discarded. Cf. *DDI Seamless Cylinder International, Inc. v. General Fire Extinguisher Corp.*, 14 F.3d 1163, 1166 (7th Cir.1994); *United States v. Board of Education*, 11 F.3d 668, 672 (7th Cir.1993); *Kowaleviocz v. Local 333*, 942 F.2d 285, 289 (4th Cir.1991). (We have emphasized the need for flexible interpretation of the reimbursement provision before. *North Shore Gas Co. v. EPA, supra*, 930 F.2d at 1244–45.)

■ But that is not our case. The agency takes the position, which may or may not be correct but is not irrational, that a polluter who wants to take advantage of the reimbursement provision may be required to clean up not only his own mess, as it were, but other messes at the same site. The agency's position is at least consistent with the design of the reimbursement provision, which is to defer liability issues until after the clean-up is completed—that is, until the reimbursement proceeding. *Kelley v. EPA*, 15 F.3d 1100, 1106 (D.C.Cir.1994). The requirement that the reimbursement-seeker clean up the entire site could rationally be believed to contribute to the Act's central objective of promoting the clean-up of contaminated land. And the burden on the party targeted by the order will in most cases be bearable, since he can certainly get reimbursement for the costs that he is asked to incur *not* as a responsible party. The alternative—each polluter at a site just removing the contaminants for which *he* is responsible—may be inefficient, for the polluters may stumble over each other trying to remove separate pollutants. The pollutants may have been deposited in the same spot by successive waves of polluters, in which case

multiple removals would greatly increase total costs. Suppose two passengers in an elevator accidentally drop their keys in the space between the door of the elevator and the door of one of the floors, and the building management instructs one of its employees to go to the bottom of the elevator shaft to retrieve them. Would it make sense for the employee to make two separate trips for the two sets of keys? This is just an analogy, and analogies can lead judges astray. But our only point is that the EPA's desire to have one polluter clean up the entire site is not so flagrantly unreasonable as to entitle the polluter to disregard an order embodying that desire on the ground that the order is so plainly beyond the agency's power that it should be treated as a nullity.

This is not to deny that there would be a problem of the tail wagging the dog if the polluter responsible for only a tiny fraction of the contamination of the site were ordered to clean up the whole thing, perhaps because he had the deepest pocket of all the responsible parties. That might begin to approach our Chernobyl hypothetical. It is not the situation here. Employers Insurance was being asked to spend only about 10 percent more to clean up the non-PCB contamination than it had spent to clean up the PCB contamination for which (if it was the arranger) it was indeed a responsible party.

■ In the suit that names the Administrator of the EPA as the defendant rather than the President, the insurance company argued in the district court that the agency lacks statutory authority to condition reimbursement on the cleaning up of pollution for which the party ordered is not responsible. *Employers Ins. of Wausau v. Clinton, supra*, 848 F.Supp. at 1367. Insofar as the company sought merely to vacate or narrow the order as inconsistent with the authorizing statute, it ran afoul of section 9613(h), the provision that provides the exclusive methods of challenging clean-up orders—and they do not include a suit for injunctive or declaratory relief by the person ordered to perform a clean-up. In any event, the company abandoned its attempt to invalidate the order as overbroad in its open-

ing brief in this court. Its attempt to revive the attempt in its reply brief came too late; the argument had been waived. *Gomez v. Greer,* 896 F.2d 252, 254 (7th Cir.1990); *United States v. Rodriguez,* 888 F.2d 519, 524 (7th Cir.1989).

In any event, the main thrust of the suit against the Administrator was not that the order was overbroad; it was that the Superfund law does not give a party ordered to clean up a toxic-waste site an adequate opportunity to challenge the order. The relief sought was to invalidate the limitations that section 9613(h) places on the possible routes for challenging such orders. Such relief could be obtained only in a suit against the Administrator and therefore the suit is not precluded by those limitations; it is, as we suggested at the outset of this opinion, a proper invocation of nonstatutory review. As such it merely had no merit, while insofar as it sought a declaration that the clean-up order was too broad it strayed outside the permissible bounds of such a suit and was barred by the exclusive-remedies provision.

The company is left to argue that it *did* comply with the order and that the agency is mistaken to think otherwise—the agency has misinterpreted its own order. We must consider first what our standard of review is. The relevant section, § 9606(b)(2)(A) ("any person who receives *and complies* ..."), does not say. The two other provisions potentially involved in this case, (C) and (D), imply different standards of review—plenary in (C) (the "preponderance of evidence" provision), deferential in (D) (the "arbitrary and capricious" provision). *Dico, Inc. v. Diamond, supra,* 35 F.3d at 351–52; *Kelley v. EPA, supra,* 15 F.3d at 1107. Ordinarily the interpretation of a document (the clean-up order) is considered a question of law, and appellate review is plenary. *United States v. Administrative Enterprises, Inc.,* 46 F.3d 670, 674 (7th Cir. 1995). But when the document is an order, the court or agency that issued it is, sensibly enough, considered to have special insight into its meaning, so review is deferential. *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991); *Udall*

*v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965); *In re Weber,* 25 F.3d 413, 416 (7th Cir.1994); *In re Chicago, Rock Island & Pacific R.R.,* 865 F.2d 807, 810–11 (7th Cir.1988). An additional consideration in this case is that the question of compliance with the EPA's order depends not only on what the order says and means but also on what the target of the order, the insurance company, did. The agency's opinion turning down the petition for reimbursement is based not only on a purely interpretive determination that the clean-up order was not limited to PCBs but also on a factual determination that the measures which Employers Insurance took to comply with the order did not succeed in eliminating the other contaminants. This raises issues of a purely technical nature on which the agency's determination is entitled to the usual deference that is given to administrative determinations. Cf. *Wagner Seed Co. v. Bush,* 946 F.2d 918, 921 (D.C.Cir.1991). And the order itself is full of technical terms, and we think the EPA is entitled to some scope in interpreting their meaning as well. It is, to repeat, its own order.

Which makes the case for deference stronger than in *Wagner Seed,* where the majority's conclusion that the EPA's interpretation of the meaning of the statutory language "receives and complies" is entitled to deference drew a spirited dissent from Judge Williams. *Id.* at 925. Stronger too than in *Kelley* and *Dico,* which held that no deference is to be given to the EPA's judgment on whether the person seeking reimbursement is actually liable for response costs. The Superfund law does not give the EPA responsibility for administering the reimbursement provision; it has that responsibility only by virtue of delegation by the President. So it is by no means clear that it was to have authority to interpret the provision—authority to which *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), would require the courts to defer. But the agency does have statutory authority to issue clean-up orders, and that authority carries with it, we should think, the authority to interpret those orders, and specifically to determine in this case whether its order re-

quired the cleaning up of contaminants for which the party ordered had no responsibility.

· Employers Insurance points out that the procedure by which the EPA made this determination was not hedged about with the usual safeguards of the adjudicative process, and it argues that the absence of those safeguards justifies a more searching judicial review. The petition for reimbursement was indeed handled informally, by officials who have none of the trappings or protections of judicial officers, cf. *Fishgold v. Sullivan Drydock & Repair Corp.*, 154 F.2d 785, 789 (2d Cir.) (L. Hand, J.), aff'd, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), and the petitioner, while given ample opportunity (which it took) to submit documents in support of its position, did not have most of the rights of parties to an adjudication, such as the right of cross-examination. The company argues that findings made in so maimed a proceeding should not receive any deference from a court.

But the principles that require judicial deference to administrative findings are not limited to findings made in adjudications. Indeed the broadest deference is given to the findings made in rulemaking proceedings, most of them "informal" in the same sense as the proceeding in this case. See, e.g., *Morales v. Yeutter*, 952 F.2d 954 (7th Cir.1991). The degree of deference is tied not to the formality or elaborateness of the procedures used by the agency but to the character of the issue in relation to whatever procedures were employed to resolve it. *Packers Trading Co. v. CFTC*, 972 F.2d 144, 145 (7th Cir.1992); *Central National Bank v. U.S. Dept. of Treasury*, 912 F.2d 897, 904 (7th Cir.1990). The issue of compliance with the EPA's clean-up order in this case was technical in character and was addressed in a proceeding that provided for a full exchange of evidence and argument before the agency made its final decision, which it set forth at length in a reasoned, and as it seems to us reasonable (though not necessarily correct), opinion. There is no indication that it is the kind of issue that would have been illuminated by cross-examination.

We conclude that the EPA's finding that Employers Insurance failed to comply with the clean-up order must be upheld unless it is arbitrary or capricious, or in the equivalent terminology of civil suits unless it is clearly erroneous. And it is not. The order by its terms embraces all hazardous substances at the recycling facility, regardless of the particular type of hazardous substance. No doubt the EPA could have given the order a narrower reading, interpolating a limitation to hazardous substances for whose presence at the site Employers Insurance was responsible. But it chose not to do so and we cannot say that it acted unreasonably in refusing. We have already pointed to the reasons why the EPA might want to impose on a source of one pollutant the responsibility for cleaning up the entire site that had been contaminated by that pollutant, even if the site had been contaminated by other pollutants as well. So broad an order might or might not be proper, but, Employers Insurance having waived *that* issue, the only issue left is what the EPA *meant.* We think it meant, or more precisely could reasonably be understood to have meant, that Employers Insurance could not stop its clean-up efforts when the last of the PCBs was removed. Employers Insurance is therefore entitled to no judicial relief.

AFFIRMED.