35 F.3d 348
 39 ERC 1289, 25 Envtl. L. Rep. 20,296
 DICO, INC., Appellant,
v.
Bruce M. DIAMOND, Director, Office of Waste Programs
Enforcement, United States Environmental Protection Agency;
Carol M. Browner, as Administrator of the United States
Environmental Protection Agency; United States
Environmental Protection Agency; William J. Clinton,
President of the United States; United States of America, Appellees.
 No. 93-2945.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 11, 1994.
Decided Sept. 12, 1994.
 
 Charles F. Lettow, Washington, D.C., argued (Michael R. Lazerwitz and Michael A. Mazzuchi, on the brief), for appellant.
 Paul Bangser, Washington, D.C., argued (Lois J. Schiffer, John A. Bryson, Karen L. Egbert, Marc A. Smith and Jacques B. Gelin, on the brief), for appellee.
 Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 Dico, Inc. brought suit against the United States Environmental Protection Agency and others (collectively, the EPA), seeking reimbursement for the response costs it has incurred, and will incur in the future, in complying with an administrative order issued by the EPA requiring Dico to clean up a contaminated groundwater site in Des Moines, Iowa. The District Court granted summary judgment in favor of the defendants, 821 F.Supp. 562, and Dico appeals. We reverse and remand with instructions.
 
 I.
 A.
 
 2
 The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. Secs. 9601-9675 (1988 & Supp. IV 1992), was enacted in 1980 to accomplish the dual purposes of ensuring the prompt cleanup of hazardous waste sites and imposing the costs of such cleanups on responsible parties. See General Elec. Co. v. Litton Indus. Automation Sys. Inc., 920 F.2d 1415, 1422 (8th Cir.1990), cert. denied, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). Under CERCLA Sec. 106(a), the EPA[1] may issue administrative or judicial orders requiring potentially responsible parties to provide a remedy for contamination that has been released or presents a threat of release into the environment. 42 U.S.C. Sec. 9606(a). The EPA is authorized to bring a civil action requesting daily fines and treble damages against any person who refuses to comply with an EPA order issued under Sec. 106(a). Id. Secs. 9606(b)(1) and 9607(c)(3).
 
 
 3
 As originally enacted, CERCLA provided no recourse to a party who, despite disclaiming liability, cleaned up a site and later was determined not to have been responsible for the contamination that necessitated the cleanup. To ameliorate this situation and to encourage expeditious cleanup by potentially responsible parties, Congress amended CERCLA by way of the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. No. 99-499, 100 Stat. 1613 (1986). SARA, which became effective on October 17, 1986, grants "[a]ny person who receives and complies with the terms of any order issued under [Sec. 106(a) ]" the right to petition the EPA for reimbursement of any response costs the party incurred for which it was not liable. 42 U.S.C. Sec. 9606(b)(2). If the EPA denies the request, the party may initiate a reimbursement action against the EPA in an appropriate United States district court. Id.
 
 B.
 
 4
 Located on the west bank of the Raccoon River, the Des Moines Water Works (DMWW) provides drinking water to over 250,000 people. In the mid-1970s, the EPA discovered that chlorinated organic chemicals were polluting the water at the DMWW. In September 1983, the EPA listed the site on the National Priorities List established pursuant to CERCLA. After further investigation, the EPA concluded that trichlorethylene (TCE)[2] and other hazardous substances had contaminated soils and groundwater at the site and began conducting additional studies to determine possible sources of the contamination. The EPA eventually identified at least two apparent sources, or "plumes," one source located on Dico's property, the other located north and up-gradient from Dico's property (the "north plume").
 
 
 5
 In 1985 and 1986, the EPA conducted a study to identify and evaluate alternatives for cleaning up the contaminated groundwater and restoring the water supply of the DMWW. On July 21, 1986, after public notice and a public hearing, the EPA issued an administrative order under CERCLA Sec. 106(a) directing Dico, as a potentially responsible party, to clean up the site, including the north plume, in accordance with the remedy selected by the EPA.
 
 
 6
 The order directed Dico to design and implement a system to capture and treat the contaminated groundwater. Among other things, the order required Dico to install extraction wells to collect the contaminated groundwater on the east and west sides of the Raccoon River, to treat the extracted water in an air stripping column, removing at least 96 percent of the TCE, and to discharge the treated water into the river. The order also required Dico to install monitoring systems to measure the success of Dico's remedial measures and assure compliance with the order. By its terms, the order was "effective immediately upon receipt." Administrative Order In re Dico, Inc., No. 86-F0011, at 33 (July 21, 1986), Joint App., Vol. I at 52. However, the order also informed Dico that it could request a conference with the EPA within five working days. Dico made such a request and at the conference, held on August 21, 1986, Dico raised objections to the EPA order. Dico reiterated these objections in a letter to the EPA on September 8, 1986. The EPA responded to Dico's objections on October 21, 1986, by modifying the order to reflect some of the changes requested by Dico. By letter on October 24, 1986, the EPA further modified the order, and on November 28, 1986, the EPA agreed to Dico's suggestion to eliminate all proposed extraction wells on the west side of the river. After the EPA had made its final modification to the order, Dico was unable to implement the order because it called for Dico to install extraction wells on property to which Dico could not obtain access. Eventually this difficulty was overcome, and Dico began to construct the remedial system in May 1987. The system went into operation in December 1987.
 
 C.
 
 7
 In July 1988, Dico petitioned the EPA under CERCLA Sec. 106(b)(2) for reimbursement of response costs allocable to its cleanup efforts directed at the north plume.[3] The EPA denied the request on May 11, 1992, on the ground that the order directing Dico's cleanup efforts was issued on July 21, 1986, and that the reimbursement provision does not apply to parties who received such an order prior to SARA's October 17, 1986, effective date. The agency did not reach the question of whether Dico was a party responsible for the north-plume contamination. Dico then brought suit against the EPA in the District Court alleging three bases for reimbursement: CERCLA Sec. 106(b)(2), the Due Process Clause of the Fifth Amendment, and the Takings Clause of the Fifth Amendment. On cross-motions for summary judgment as to the Sec. 106(b)(2) claim, the District Court, treating the action as one for judicial review of the EPA's decision and granting deference to the EPA's interpretation of the reimbursement provision, held that Dico is ineligible for reimbursement under CERCLA and granted summary judgment for the EPA. The court then dismissed Dico's due process and takings claims, holding that the court lacked subject matter jurisdiction. Dico timely appeals.
 
 
 8
 In its appeal, Dico argues that the District Court erred in granting deference to the EPA's construction of Sec. 106(b)(2) and in concluding that Dico does not qualify for reimbursement under the section as a party who "received and complied" with an order issued after the SARA amendments to CERCLA became effective. Dico also reasserts its constitutional claims and argues that the District Court erred in dismissing those claims for lack of subject matter jurisdiction. We review de novo a grant of summary judgment. As the parties agree that this case involves no disputed issues of material fact, summary judgment properly lies for whichever party is entitled to judgment as a matter of law. Pentel v. City of Mendota Heights, 13 F.3d 1261, 1263 (8th Cir.1994).
 
 II.
 A.
 
 9
 Before deciding whether Dico qualifies as a party that may seek reimbursement under Sec. 106(b)(2), this Court must determine whether the EPA's interpretation of Sec. 106(b)(2) is entitled to judicial deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The EPA argues that, because this suit concerns the meaning of statutory terms as interpreted by the government agency charged with administering the statute, the Court must accord the interpretation deference. Dico counters that, while CERCLA generally is administered by the EPA, Sec. 106(b)(2) grants a private right of action against the EPA and expressly establishes the judiciary as the adjudicator of the rights of the parties. We are persuaded by the plain language of Sec. 106(b)(2) that Dico's reasoning must prevail.
 
 The reimbursement provision provides:
 
 10
 (2)(A) Any person who receives and complies with the terms of any order issued under [Sec. 106(a) ] may ... petition the [EPA] for reimbursement from the Fund for the reasonable costs of such action, plus interest....
 
 
 11
 (B) If the [EPA] refuses to grant all or part of a petition ... the petitioner may ... file an action against the [EPA] in the appropriate United States district court seeking reimbursement from the Fund.
 
 
 12
 42 U.S.C. Sec. 9606(b)(2). A party who initiates such an action must establish by a preponderance of the evidence that it is not liable for the response costs for which it seeks reimbursement. Id. Sec. 9606(b)(2)(C). Chevron requires deference to an agency's interpretation of a statutory provision only if the agency is charged with administering the statute. See Chevron, 467 U.S. at 844, 104 S.Ct. at 2782.
 
 
 13
 We begin by noting the absence of any language in Sec. 106(b)(2)(B) indicating that Congress intends the action be one for judicial review. The statute nowhere uses the word "arbitrary" or "capricious" or any other words implying that "review" of an agency action "on the record" or "on the administrative record" was intended by Congress. We decline to read language of judicial review into the section, particularly in light of the fact that Congress is accustomed to including provisions for judicial review in statutes when that is what it intends. Indeed, Congress provided for precisely this form of deferential review in Sec. 106(b)(2)(D), where it granted a party who is liable for response costs the right to recover its costs "to the extent that it can demonstrate, on the administrative record, that [the cleanup order] was arbitrary and capricious or was otherwise not in accordance with law." 42 U.S.C. Sec. 9606(b)(2)(D). That Congress omitted these words from Sec. 106(b)(2)(B) is instructive and supports our conclusion that Congress intends actions brought pursuant to this provision be tried de novo by the court.
 
 
 14
 Thus, we think the language of Sec. 106(b)(2)(B) makes clear that, while Congress granted the executive branch most of the responsibility for administering CERCLA, it gave plenary power to the courts to interpret Sec. 106(b)(2)(B). Where the executive is not charged with administering the particular statute at issue, its interpretation should not be afforded the deference specified in Chevron. See Smith v. Lipton (In re Motion to Unseal Electronic Surveillance Evidence), 990 F.2d 1015, 1020 n. 5 (8th Cir.1993) (holding that, because the Department of Justice is not authorized to administer 18 U.S.C. Sec. 2517, its interpretation is not entitled to Chevron deference). The Supreme Court recently elucidated this point in Adams Fruit Co. v. Barrett, 494 U.S. 638, 649-650, 110 S.Ct. 1384, 1390-91, 108 L.Ed.2d 585 (1990). There the Court refused to grant deference to the Department of Labor's interpretation of the private right of action provision of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), determining that the statute granted the agency no authority to interpret the Act's enforcement provisions. The argument against deferring to the agency in Adams Fruit was somewhat stronger than the argument is here because the Department of Labor had no statutory authority to act under AWPA's enforcement provision, while here the EPA must construe the reimbursement provision as a predicate to its action under Sec. 106(b)(2)(A). However, that the EPA is given an opportunity to resolve the matter prior to litigation does not alter the language of Sec. 106(b)(2)(B) which "has expressly established the Judiciary ... as the adjudicator of private rights of action arising under the [section]," see id. at 649, 110 S.Ct. at 1390, and also does not provide a means by which the EPA may "bootstrap itself into an area in which it has no jurisdiction," see id. at 650, 110 S.Ct. at 1391 (internal citation and quotation marks omitted).
 
 
 15
 We are not alone in our reading of Sec. 106(b)(2)(B). In determining whether the EPA has the ultimate authority to resolve issues of liability under CERCLA, the D.C. Circuit analyzed Sec. 106(b)(2)(B).
 
 
 16
 If EPA denies reimbursement because the agency contends the party is liable, the party has a right to bring an action in federal court.... EPA is, under that scenario, only a defendant; its preliminary conclusion that the party was liable is entitled to no consideration, let alone the deference afforded to the typical administrative agency adjudication.
 
 
 17
 Kelley v. EPA, 15 F.3d 1100, 1107 (D.C.Cir.1994);[4] see also United States v. Ottati & Goss, Inc., 900 F.2d 429, 434-36 (1st Cir.1990) (holding that a court, in granting an injunction under the first sentence of CERCLA Sec. 106(a), need not accord deference to the EPA's decision regarding what relief is proper).
 
 
 18
 Our conclusion that Sec. 106(b)(2)(B) creates a private right of action against the EPA for reimbursement of response costs and explicitly establishes the judiciary as adjudicator of the rights of the parties makes "consult[ing] executive interpretations" of the section inappropriate. Adams Fruit, 494 U.S. at 650, 110 S.Ct. at 1391. Thus, we turn to the merits and examine de novo whether the language of Sec. 106(b)(2)(B) allows Dico to proceed with its action for reimbursement.
 
 B.
 
 19
 Dico argues that, because the EPA modified the cleanup order after the reimbursement provision became effective on October 17, 1986, and because Dico also did not begin to implement the remedial scheme required by the order until after this date, it qualifies as a party who may seek reimbursement under the express language of the statute.[5] The EPA maintains that a party proceeding under the reimbursement provision must have both received and complied with an order subsequent to the date SARA became effective to qualify for reimbursement, and, as Dico's order was issued several months prior to this date, Dico is ineligible for reimbursement. The EPA looks to Wagner Seed Co. v. Bush, 946 F.2d 918 (D.C.Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992) and Bethlehem Steel Corp. v. Bush, 918 F.2d 1323 (7th Cir.1990), for support for its position. However, both circuits granted deference to the EPA's determination under Sec. 106(b)(2)(A) and held only that the EPA's decision was reasonable under the statute. In addition, in both cases the appellant clearly had received a cleanup order in final form well before SARA's effective date, and, therefore these cases are distinguishable factually from the present case in which the cleanup order did not assume its final form until after the effective date of the statute.
 
 
 20
 "Any person who receives and complies with the terms of any order issued under [Sec. 106(a) ]" may petition the EPA for reimbursement of response costs for which it is not liable. 42 U.S.C. Sec. 9606(b)(2). Assuming arguendo that the EPA is correct that a party seeking reimbursement must have both "received and complied" with an order subsequent to SARA's effective date to qualify for the benefits of this provision, we believe Dico meets this standard.[6] It is undisputed that the order issued to Dico thrice was modified after the date the reimbursement provision became law. Moreover, the cumulative effect of the modifications made the resulting order considerably different from the EPA's original order, and the cleanup work was not commenced until after the EPA made its final modifications to the order. In these circumstances, we conclude that the order was not final (for purposes of interpretation of the "receives and complies" language) until the last modification was made. This means that Dico did not "receive," and was unable to "comply" with, the order until November 28, 1986, after the reimbursement provision was effective.[7]
 
 
 21
 Our interpretation of Sec. 106(b)(2) is supported by Congress's intent in passing the section. Before SARA was enacted, a party in Dico's alleged position was on the horns of a dilemma: it could proceed with the ordered cleanup and pay to remedy contamination for which it was not liable, or it could refuse to comply with an order and be haled into court by the EPA, risking treble damages. Congress enacted Sec. 106(b)(2) to obviate this dilemma, furnishing an incentive for expeditious cleanup and adding a measure of fairness to the law. Because Congress passed Sec. 106(b)(2) as remedial legislation, and as Dico purports to belong to the class that is intended to benefit from the legislation, we must read Sec. 106(b)(2) broadly to accomplish its goals.[8] See Cyprus Indus. Minerals Co. v. Federal Mine Safety and Health Review Comm'n, 664 F.2d 1116, 1118 (9th Cir.1981) ("remedial statutes are construed broadly" to accomplish Congress's purposes). We are satisfied that under a proper reading of the statute the Sec. 106(b)(2) reimbursement provision is available to Dico.
 
 III.
 
 22
 Because of our resolution of Dico's statutory claim, we need not reach the constitutional claims it raises, including whether the District Court had jurisdiction over these claims.
 
 IV.
 
 23
 For the reasons stated, we hold that 42 U.S.C. Sec. 9606(b)(2) applies to Dico's claim for reimbursement. Accordingly, we reverse the judgment of the District Court and remand the case to that court with instructions that it remand the case to the EPA for further proceedings consistent with this opinion.
 
 
 
 [1]
 CERCLA granted authority to the President; however, the President has delegated much of his authority under the pertinent provisions of CERCLA to the EPA. See Exec. Order No. 12,580, Sec. 4(d)(1), 3 C.F.R. 193, 197 (1988), reprinted in 42 U.S.C. Sec. 9615 note (1988). We thus will refer throughout this opinion to the EPA
 
 
 [2]
 TCE is a suspected human carcinogen and also has been linked to neurological damage, and, at high exposure, death. See Administrative Order In re Dico, Inc., No. 86-F0011, at 7 (July 21, 1986), Joint App., Vol. I at 52
 
 
 [3]
 Dico's original petition sought reimbursement in the amount of $532,453.54. While its request was pending, Dico supplemented its petition on three occasions. Dico now seeks a total of $764,134.08
 
 
 [4]
 We are aware that the D.C.Circuit has reached the opposite conclusion on the particular issue we decide today. In Wagner Seed Co. v. Bush, 946 F.2d 918, 920-23 (D.C.Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992), the Court held that the EPA's interpretation of the reimbursement provision, as to the issue of whether a party is qualified to proceed under the provision, is entitled to deference. In reaching this conclusion, the Court emphasized the EPA's role in administering CERCLA and, particularly, the fact that the statute requires a party first to petition the EPA for reimbursement before bringing an action under Sec. 106(b)(2)(B). We fail to discern a difference between issues of qualification and issues of liability. In either case, the EPA's authority is limited by the language of Sec. 106(b)(2)(B) which places resolution of any issue in dispute in the hands of the judiciary. We cannot agree with the D.C. Circuit's bifurcation of these Sec. 106(b)(2)(B) issues and, instead, believe that Judge Williams's thoughtful dissent in Wagner Seed reaches the correct conclusion. See Wagner Seed, 946 F.2d at 925-928 (Williams, J., dissenting)
 
 
 [5]
 Thus, Dico emphasizes, it is not asking for retroactive application of the statute
 
 
 [6]
 We save for another day resolution of whether Sec. 106(b)(2) applies retroactively to a party who has received and complied with an order issued prior to SARA's effective date
 
 
 [7]
 The language of the order stating that it is "effective immediately" and that all times for performance relate back to the original issuance date do not alter this result, and instead relates to the EPA's ability to commence an enforcement action against a party who does not comply with an order, an issue not in dispute
 
 
 [8]
 The EPA argues that Sec. 106(b)(2) is a waiver of the government's immunity from suit and thus demands a narrow construction in the government's favor. See Library of Congress v. Shaw, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986). We reject this argument. As Judge Williams points out in his dissent in Wagner Seed, Congress already had waived governmental immunity in 1980 by making Superfund liable under CERCLA Sec. 111(a)(2). See Wagner Seed, 946 F.2d 918, 929-30 (Williams, J., dissenting). Immunity already having been waived, Sec. 106(b)(2) is merely an additional (and fairer) procedure whereby a party who incurs response costs may obtain reimbursement for those costs