United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 97-2254

United States of America,

         Appellee,

    v.

Dico, Incorporated,

         Appellant.

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: November 20, 1997
Filed: February 12, 1998

_____

Before BOWMAN and MURPHY, Circuit Judges, and CONMY,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Dico, Inc., appeals from the District Court's decision to grant summary judgment to the United States on the government's claim to recover from Dico response costs incurred in association with the environmental cleanup of groundwater determined by the Environmental Protection Agency (EPA) to be contaminated. Dico also appeals the order dismissing its counterclaim, in which the company sought reimbursement of

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota, sitting by designation.

amounts it expended cleaning up the site. We affirm in part and vacate and remand in part.

I.

This case arises under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601-9675, as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub. L. No. 99-499, 100 Stat. 1613. Under CERCLA, the EPA has broad "authority to direct clean-up operations prior to a final judicial determination of the rights and liabilities of the parties affected." Solid State Circuits, Inc.v. United States EPA, 812 F.2d 383, 387 (8th Cir. 1987). The penalties can be harsh for those who refuse to comply with an administrative cleanup order if they later are determined to be liable for the cleanup and to have resisted the order without sufficient cause. See id. at 388. In the 1986 SARA amendments, Congress provided procedures by which a party who pays for cleanup pursuant to an order from the EPA but does not believe it is liable may petition the President to recover its response costs from the Hazardous Substance Response Trust Fund (Superfund) established by CERCLA, and may bring the same claim in federal court if it receives an adverse ruling from the President.[2] See 42 U.S.C. § 9606(b)(2) (1994). This is the basis for Dico's counterclaim. By the same token, CERCLA provides that the EPA may bring an action in district court to recover from responsible parties the removal and remediation costs the government has incurred in association with the cleanup of a hazardous waste site. See id. § 9607(a) (1994). This is the basis of the EPA's claim.

---

[2]The President has delegated much of his authority in these matters to the Administrator of the Environmental Protection Agency (EPA). See Dico, Inc. v. Diamond, 35 F.3d 348, 349 n.1 (8th Cir. 1994).

This is not the first time this litigation has been before our Court.  See Dico, Inc. v. Diamond, 35 F.3d 348 (8th Cir. 1994).  The case has its roots in the discovery in the mid-1970s of contamination in the Des Moines, Iowa, public water supply.  EPA tests determined that the Des Moines Water Works (DMWW) was contaminated by trichlorethylene (TCE) and other substances designated as hazardous by the EPA.  The EPA identified the land area determined to be the source of the contamination, the Des Moines TCE Site, and in 1983 this site was placed on the EPA's National Priority List (NPL).  Dico's property was included in the site.  Over the years, Dico and its corporate predecessors had used TCE in industrial degreasing operations and other activities, and other businesses in the vicinity apparently had used the compound on their properties as well.  In 1986, the EPA ordered Dico, as a potentially responsible party (PRP), to capture and treat the contaminated groundwater in Operable Unit 1 (OU-1), one of four operable units that the EPA defined for purposes of cleaning up the site and the only one at issue here.  The remedial system Dico constructed began operating in December 1987.

The following summer, in July 1988, Dico sought from the Superfund reimbursement for costs the company had incurred, and would continue to incur, with respect to its remediation efforts at the site.  The EPA denied the petition, holding that the 1986 SARA amendment that permitted such reimbursement did not apply retroactively to the EPA's cleanup order issued to Dico before the effective date of the amendment.  The Environmental Appeals Board (EAB) sustained the EPA after an administrative hearing.  Dico then brought suit in the district court, but the court granted summary judgment for the EPA, deferring to the agency's interpretation of the statute.  Dico appealed.  We reversed and remanded to the district court with instructions to remand for further proceedings.  Our opinion was filed in September 1994. On April 21, 1995, with Dico's administrative claim for reimbursement pending before the EAB, the United States filed this action in the District Court seeking recovery from Dico--and only Dico--of costs that the EPA had incurred in connection with cleanup of the groundwater at the Des Moines site.  Dico filed a counterclaim for

reimbursement of its costs, and also moved the EAB to stay the administrative proceedings on the ground that the claim pending before the EAB was the same as Dico's counterclaim filed in federal court. The EAB granted the motion.

On September 13, 1996, the District Court granted the EPA's motion to dismiss Dico's counterclaim for failure to exhaust administrative remedies. On April 1, 1997, the court granted summary judgment to the EPA on its claim for response costs, including indirect and oversight costs, in the amount of $4,378,110.66. See United States v. Dico, Inc., 979 F. Supp. 1255 (S.D. Iowa 1997). On April 25, 1997, the EPA moved the EAB to deny Dico's administrative action for reimbursement without a hearing, arguing that it was barred by res judicata. Counsel for Dico represented to this Court at oral argument that the motion has been granted. Dico appeals the orders of the District Court.

## II.

We first address Dico's claim that the court erred in dismissing its counterclaim. The District Court held that Dico failed to exhaust its administrative remedies. In the absence of exhaustion, when exhaustion is required, the court does not have subject matter jurisdiction. We review this question of law de novo.

In its counterclaim, Dico sought recoupment of its remediation costs, arguing that its operations did not cause TCE contamination of the groundwater at the site. Dico says it seeks only an offset of the EPA's claim for response costs, which are less than Dico's costs, and no affirmative recovery--notwithstanding its claim that it is liable for *no* cleanup costs whatsoever, a theme that runs throughout its brief. Dico does not contend that there is no exhaustion requirement, but makes various arguments that the requirement should be "waived" in these circumstances, that somehow Dico did exhaust its administrative remedies, or that Dico was "excused" from exhausting. We

are not persuaded by any of these arguments, as the law is very clear on this issue in circumstances such as these.

"The doctrine of exhaustion of administrative remedies is one among related doctrines--including abstention, finality, and ripeness--that govern the timing of federal-court decisionmaking."  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  Such exhaustion "is required where Congress imposes an exhaustion requirement by statute." Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579 (1989).  The government argues that Congress did so with CERCLA, and we agree.

No later than sixty days after completing the response and remedial action required by an administrative order, a party may "petition the President for reimbursement from the Fund for the reasonable costs of such action, plus interest."  42 U.S.C. § 9606(b)(2)(A).  Then, "[i]f the President refuses to grant all or part of a petition made under this paragraph, the petitioner may . . . file an action against the President in the appropriate United States district court seeking reimbursement from the Fund."  Id. § 9606(b)(2)(B).  Using such language, Congress fully intended that petitioners seeking reimbursement of costs expended complying with an administrative cleanup order should not have a cause of action in the courts until they have exhausted the administrative remedies set forth in the statute.  See United States v. M/V Santa Clara I, 819 F. Supp. 507, 512 (D.S.C. 1993); Employers Ins. of Wausau v. Bush, 791 F. Supp. 1314, 1322 (N.D. Ill. 1992).  On behalf of the United States, Congress has consented to suit in federal court, but that consent is not and need not be absolute. Here, Congress has restricted the right to sue by, among other things, insuring that the executive branch has the initial opportunity to dispense justice.  The court did not have subject matter jurisdiction over Dico's counterclaim.

Dico's claim that the requirement should be "waived" is without merit.  It is true that "where Congress has not clearly required exhaustion, sound judicial discretion governs."  McCarthy, 503 U.S. at 144.  But in CERCLA, Congress "clearly required

exhaustion," so we need not evaluate the factors a court would consider in exercising its discretion. But even assuming arguendo that Congress had not spoken clearly, and that the court did have discretion to waive exhaustion requirements, we would find no abuse of that discretion.

To the extent an exhaustion requirement is judicially imposed, it can be waived. The waiver decision should "be guided by the policies underlying" the doctrine of exhaustion of administrative remedies. Bowen v. City of New York, 476 U.S. 467, 484 (1986). The exhaustion requirement is designed to "[protect] administrative agency authority and [promote] judicial efficiency," McCarthy, 503 U.S. at 145, and those are the policies a court must keep in mind in making the waiver decision. The rationale of the doctrine is that an administrative agency should have the opportunity to apply its expertise, exercise the discretion delegated to it by Congress, and correct its own alleged errors in the first instance, with the possibility of avoiding resort to the courts altogether. The exhaustion requirement also improves the possibility that there will be produced a fully-developed factual record, facilitating judicial review should it become necessary and promoting judicial efficiency by aiding the court in its evaluation and analysis of often technical matters. See McKart v. United States, 395 U.S. 185, 193-95 (1969); Peters v. Union Pac. R.R., 80 F.3d 257, 263 n.3 (8th Cir. 1996); Sharps v. United States Forest Serv., 28 F.3d 851, 854 (8th Cir. 1994).

This case has little to commend it for waiver. Here, a fully-developed factual record drawing upon agency expertise likely would be most helpful to the court. Cf. Bowen, 476 U.S. at 485 (allowing waiver of administrative remedies where, inter alia, the administrative policy at issue did not depend on facts before the court, but was illegal on its face). Waiver may be appropriate when "an agency . . . may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute." McCarthy, 503 U.S. at 147-48. In such a case, it may make sense to bypass the administrative action. Presumably Dico has raised no constitutional issues in the administrative

-6-

proceeding and there certainly are none in the counterclaim, which Dico has represented to be identical to its administrative claim. No other issues incapable of resolution by the agency have been suggested. Thus institutional incompetence is not a ground for waiver. On the record before us, we conclude that, even if the District Court were permitted to exercise discretion in determining if Dico was required to exhaust its administrative remedies before bringing the same claim in court, Dico has demonstrated insufficient reason that such discretion should be exercised in favor of waiver.

Dico also argues that it exhausted its administrative remedies because it filed its administrative petition for reimbursement before the EPA filed its lawsuit in the District Court. The company makes this argument notwithstanding the fact that Dico, and not the government, sought to stay the administrative proceedings. Although Dico already had filed its administrative claim when the United States filed suit in federal court, the proceedings were not completed. The administrative remedies required by statute were not exhausted absent a final administrative decision.

Dico contends that it should be "excused" from exhausting its administrative remedies because it otherwise loses all recourse to the courts on its claim for reimbursement. "To be weighed against the interests in exhaustion is the harsh impact of the doctrine when it is invoked to bar any judicial review of a [petitioner's] claims." McGee v. United States, 402 U.S. 479, 484 (1971). The company was excused, Dico contends, because it would be a violation of public policy if Dico's failure to exhaust would result in the EPA availing itself of the jurisdiction of the federal court, while Dico could not resort to the same forum. Dico asserts (and the government appears to agree) that its counterclaim is compulsory because it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," Fed. R. Civ. P. 13(a), and therefore will be lost if not asserted in its responsive pleading to the EPA's claim. The cases Dico cites in support of its argument that it should be excused from the exhaustion requirement, however, analyze claims under the Federal Tort Claims

Act, which specifically exempts counterclaims from exhaustion requirements. See 28 U.S.C. § 2675(a). It is our conclusion, in any case, that the "excuse" is not necessary, as Dico's counterclaim is not compulsory and therefore is not lost if it is dismissed for failure to exhaust administrative remedies.

Under Federal Rule of Civil Procedure 13(a), a compulsory counterclaim must be asserted in responsive pleadings or it is "thereafter barred." Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974). There are exceptions to the rule, one of which relieves a party from stating the counterclaim if "at the time the action was commenced the claim was the subject of another pending action." Fed. R. Civ. P. 13(a)(1). That is the case here. Dico filed its administrative claim in 1988. Although the claim was denied in 1992, it was remanded for further proceedings in 1994. So at the time Dico's answer was required to be filed, there was "another pending action" the subject of which was Dico's claim for reimbursement of its cleanup costs. The rule does not require that the action be pending before another court, to the exclusion of an administrative tribunal of competent jurisdiction. We conclude that Dico's administrative claim before the EAB, required by statute to be resolved before filing suit in court, is "another pending action" within the meaning of Rule 13(a)(1). See Bethlehem Steel Co. v. Lykes Bros. Steamship Co., 35 F.R.D. 344, 346 (D.D.C. 1964) (holding that counterclaim was the "subject of another pending action" before the Maritime Board and therefore was not compulsory). Perhaps Dico miscalculated in seeking a stay of the administrative proceeding instead of moving to stay the EPA's court proceeding, but the claim before the EAB was only stayed and not denied, and therefore was pending at the time the counterclaim was filed.

In sum, the District Court properly dismissed Dico's counterclaim. The court did not have subject matter jurisdiction because Dico failed to exhaust the administrative remedies provided by CERCLA before filing its counterclaim. But the counterclaim was not compulsory and therefore should have been dismissed without prejudice.

We now consider the District Court's decision to grant summary judgment to the United States on the merits of its claim.

III.

Dico presents a series of questions raising the issue whether, and if so to what extent, Dico was liable for the groundwater contamination for which the administrative cleanup order was issued. The District Court, in granting summary judgment for the United States on its claim for reimbursement of costs associated with cleanup of OU-1, concluded that Dico raised no genuine issues of material fact in response to the EPA's motion. We review de novo, viewing the evidence in the light most favorable to Dico, and we will affirm only if we agree there are no genuine issues of material fact and that the United States is entitled to judgment as a matter of law.

Dico first argues that the EPA has not proved that the company should be held strictly liable for the EPA's costs of cleaning up OU-1 under 42 U.S.C. § 9607(a). See Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 934 (8th Cir. 1995) (setting forth elements that must be shown to prove liability under § 9607(a)). The District Court held that Dico was (1) an owner or operator (2) at a time when TCE was released, see 42 U.S.C. § 9607(a), propositions with which Dico does not quarrel. But there is a third requirement before strict liability attaches:[3] notwithstanding a release, the "plaintiff must establish a causal nexus between that release and the incurrence of response costs," although "the *degree* of connection" required is open to some debate. Control Data Corp., 53 F.3d at 935 n.8. The District Court made short work of Dico's argument that the necessary connection cannot be made. The court held that "Dico does not dispute the United States incurred *some* response costs as a result of the TCE

---

[3]There is a fourth element that must be proved as well: "that the costs [sought to be recovered by the EPA] were necessary and consistent with the national contingency plan." Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 934 (8th Cir. 1995). This is not an issue that needs to be addressed in this appeal.

contamination at issue" and therefore concluded that Dico was strictly liable for the costs at issue. United States v. Dico, Inc., 979 F. Supp. at 1259. The District Court erred.

Although Dico may have conceded that its operations over the years could have caused soil contamination at the site, we see nothing in the record to support the proposition that Dico admitted that any such soil contamination caused the groundwater contamination *at OU-1*, which in turn caused the EPA to incur response costs. In fact, as we read the record, Dico consistently has denied responsibility for groundwater contamination at OU-1, even while conceding the possibility that it is liable for soil contamination within the site. As the United States acknowledges,

> Operable Unit 1 ("OU-1"), which is the focus of this litigation, was separately delineated to deal with the groundwater contamination, and Operable Unit 2 ("OU-2"), also known as the South Area Source Control Operable Unit, was designated to address *releases to the groundwater from the soil at Dico's property*--which comprises a portion of the Site.

Brief of Appellee at 6 (emphasis added). The government freely admits that "[t]he EPA in this lawsuit is seeking *only to recover its expenses regarding OU-1*, and not OU-2." Id. at 6 n.7 (emphasis added). Any response costs the EPA might have incurred in relation to OU-2 or any other operable unit within the site, and therefore evidence of Dico's alleged admissions regarding soil contamination within the site, are of no consequence.

It remains to be determined whether Dico has raised a genuine issue of material fact on the question of whether the TCE disposal for which Dico is potentially responsible, soil contamination within the site, is the source of the groundwater contamination at OU-1. Because the District Court determined that Dico admitted liability for some of the EPA's OU-1 response costs (which we now hold was error),

the court did not address the question.  After reviewing the record before us, we conclude that Dico has carried its burden and that summary judgment was inappropriate in this case.

There is some evidence in the record that the highest concentrations of TCE groundwater contamination are directly beneath Dico's property.  This certainly is circumstantial evidence that it was Dico's actions that caused the contamination at OU-1.  But Dico submitted evidence that none of the EPA's numerous soil borings from the area establishes a continuous line of contamination from the soil surface, through fill and native soils, to the groundwater.  Further, Dico asserts and has submitted evidence in support of the assertion that, to the extent the record may be said to include evidence of continuous borings that do show a direct line from Dico property to the water table, the methodology employed in the sampling and the testing of those borings is open to serious challenge.  The EPA answers that there are other ways for the TCE contamination to have migrated to the groundwater other than straight down through the soil.  But the EPA's hypothesis that this *may* be what happened at the Des Moines TCE Site is unsupported by record evidence, and therefore does not resolve the fact question of whether that is what actually happened at the site in the years before groundwater contamination was discovered.

Granted, the witnesses whose testimony arguably establishes genuine issues of material fact have self-serving reasons for testifying as they have.  But that also can be said of the EPA's witnesses.  Assessing the credibility of witnesses and evaluating the weight to assign to their testimony is the job of the fact-finder, and is not a function for the court on a motion for summary judgment.  See Oldham v. West, 47 F.3d 985, 988-89 (8th Cir. 1995).  Therefore, where there are witnesses whose testimony raises genuine issues of material fact, summary judgment is inappropriate.

We conclude that the United States, as plaintiff seeking a monetary recovery of considerable magnitude, should be put to its proof on its claim that Dico's disposal of

hazardous materials caused groundwater contamination that led to the response costs that the EPA incurred in connection with OU-1. Dico's evidence raises a genuine issue of material fact for resolution at trial.

Finally, Dico contends that it was entitled to the statutory defense set forth in 42 U.S.C. § 9607(b)(3) (1994) because the release of hazardous substances at issue and the resultant damages "were caused solely by . . . an act or omission of a third party" not connected with Dico. The company argues that, with regard to costs related to the so-called north plume of contamination at the site, located north of and up-gradient from Dico's property, "Dico is an innocent third party" because that "contamination was caused solely by sources other than Dico." Brief of Appellant at 29. Dico reiterates that it is not responsible for the groundwater contamination "at all." Id. But even if it is, Dico claims, "the North Plume is a separate and distinct plume whose harm is capable of reasonable divisibility and apportionment," id. at 31, and as a matter of law Dico should not be responsible for that part of the EPA's response costs that are not attributable to Dico releases.

Because we have held that the case should be remanded for trial on the question of Dico's liability, we need not and do not address this fact-dependent argument. It should be resolved at trial.

IV.

For its final issue on appeal, Dico insists that the indirect and oversight costs that the EPA supposedly incurred in connection with OU-1 were not recoverable. The District Court held that they were, although the court did not indicate what part of the $4.3 million award was attributable to the disputed costs (and counsel for the government could not definitively break it down for us at oral argument). Dico contends that such expenses are not "costs of removal or remedial action incurred by the United States Government," 42 U.S.C. § 9607(a)(4)(A), within the meaning of

-12-

CERCLA. Because we are vacating the judgment entered for the United States and remanding for trial, the money judgment is necessarily set aside in its entirety. Resolution of the issue of whether costs that the EPA may recover pursuant to 42 U.S.C. § 9607(a) include indirect and oversight costs is reserved for another day, and quite possibly another case.

V.

The District Court's decision to dismiss Dico's counterclaim on the ground that Dico has not exhausted its administrative remedies is affirmed, with instructions that the court make it clear that the dismissal is without prejudice.[4] The judgment entered for the United States is vacated and the money judgment is set aside. The case is remanded to the District Court for further proceedings consistent with this opinion.

---

[4]As we mentioned early in the opinion, after the District Court granted summary judgment to the United States in this case, the EPA moved the EAB for denial without a hearing of Dico's petition for reimbursement on grounds of res judicata. Dico's counsel told the Court at oral argument that the motion has been granted. Although we do not know the grounds on which the EAB's decision was made, and we therefore express no opinion on the merits thereof, we do point out that it is Dico's counterclaim, not the government's claim, that is said to be identical to the administrative petition for reimbursement. It should be remembered that the counterclaim was dismissed on jurisdictional grounds, and there was no full and fair adjudication on the merits. Moreover, given our disposition of the present appeal, there is no final judgment from the District Court on the government's claim. See W.A. Lang Co. v. Anderberg-Lund Printing Co. (In re Anderberg-Lund Printing Co.), 109 F.3d 1343, 1346 (8th Cir. 1997) (discussing elements of the rule of res judicata).

-13-

A true copy.

Attest:

          CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.